498 S.E.2d 862

Louis Alan TAYLOR, Cathy Lee Taylor, Dennis Bright, Earlene Bright, Elaine J. Couch, Billy D. Mulligan, Diane S. Mulligan, Eric G. Baumgardner, Patricia L. Baumgardner, Danny L. Johnson, and Vicki W. Johnson, Respondents,

v.

Jimmy LINDSEY and Linda G. Echols, Petitioners.

No. 24771.

Supreme Court of South Carolina.

Heard Jan. 20, 1998.
Decided March 9, 1998.
Rehearing Denied April 9, 1998.

2

Paul L. Foster, Jr., and Joseph G. Armstrong, both of Foster & Foster, L.L.P., Greenville, for petitioners.

Tom W. Dunaway, III, of Dunaway & Associates, Anderson, for respondents.

MOORE, Justice:

We granted petitioners a writ of certiorari to review the Court of Appeals' decision in *Taylor v. Lindsey*, Op. No. 96–UP–411 (Ct.App. filed November 18, 1996). We reverse.

## FACTS

Petitioner Linda Echols purchased two lots from petitioner Jimmy Lindsey in the Camelot Court subdivision.[1] A restrictive covenant states: "No residence to cost less than $10,000.00 shall be erected on said lots...." The respondents brought this action seeking an injunction against Echols preventing her from placing a mobile home on her lots and preventing Lindsey from allowing the placement of mobile homes on other lots he still owns. The master held the restrictive covenant does not prohibit mobile homes. Respondents appealed to the Court of Appeals. The Court of Appeals reversed the master and found the restrictive covenant prohibits the placement of mobile homes on the lots.

## ISSUE

Did the Court of Appeals err in holding the restrictive covenant prohibits mobile homes? [2]

## DISCUSSION

Petitioners contend the Court of Appeals erred by holding *Nance v. Waldrop*, 258 S.C. 69, 187 S.E.2d 226 (1972), dispositive. We agree.

In *Nance*, the Court construed a restrictive covenant in a deed written in 1938. The covenant stated: "No house shall be erected thereon costing less than Four Thousand Five

---

1. This subdivision was originally subdivided in the early 1960s by M.W. Fore. However, the subdivision never fully developed and as of 1995 only six houses were currently built on the 167 lots. These six homes are valued between $64,000 and $75,000.

2. An action to enforce restrictive covenants by injunction is in equity. *Holling v. Margiotta*, 231 S.C. 676, 100 S.E.2d 397 (1957). On appeal, in an equitable action tried by a master alone, we can find facts in accordance with our view of the evidence. *Townes Assoc. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

Hundred ($4,500.00) Dollars." The Court noted that mobile homes were virtually unknown in 1938 and whether mobile homes were restricted was not considered by the parties. The Court then held that use of the words "house" and "erected" indicated an intent on the part of the creator that only conventional homes be built and mobile homes were prohibited.

Words of a restrictive covenant will be given the common, ordinary meaning attributed to them at the time of their execution. *Marriott Corp. v. Combined Properties Ltd. Partnership*, 239 Va. 506, 391 S.E.2d 313 (1990). *See also* 20 Am.Jur.2d *Covenants* § 171 (1995) ("The words of the covenant will be given their commonly held meaning as of the date the covenant was written, not as of some subsequent date."). " 'Restrictive covenants are contractual in nature,' so that the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Palmetto Dunes Resort v. Brown*, 287 S.C. 1, 336 S.E.2d 15 (1985). We question how the parties in *Nance* could have intended to prohibit mobile homes which were nonexistent when the restrictive covenant was drafted. We hereby hold *Nance*, a 3–2 decision, was incorrectly decided and overrule it.

"The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written." *Forest Land Co. v. Black*, 216 S.C. 255, 57 S.E.2d 420, 424 (1950). It is still the settled rule in this jurisdiction that restrictions as to the use of real estate should be strictly construed and all doubts resolved in favor of free use of the property, subject, however, to the provision that this rule of strict construction should not be applied so as to defeat the plain and obvious purpose of the instrument. It follows, of course, that where the language of the restrictions is equally capable of two or more different constructions that construction will be adopted which least restricts the use of the property. *McDonald v. Welborn*, 220 S.C. 10, 66 S.E.2d 327

(1951). "A restriction on the use of property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property." *Hamilton v. CCM, Inc.,* 274 S.C. 152, 157, 263 S.E.2d 378, 380 (1980).

Here, the restrictive covenant was written in the 1960s when mobile homes were prevalent. Therefore, if the grantor had wanted to restrict mobile homes, he could have done so. *Schaeffer v. Gatling,* 243 Miss. 155, 137 So.2d 819 (1962) ("If the original owner of the subdivision had desired to prohibit the use of house trailers as residences, this could easily have been accomplished by designating house trailers as [a] prohibited use, or by restricting architectural design, or by placing a minimum on the floor space for a residence, or by prohibiting temporary residences.").

Black's Law Dictionary defines "erect" as being synonymous with "construct." Black's Law Dictionary 542 (6th Ed.1990). "Construct" is defined as "to build; erect; put together; make ready for use." *Id.* at 312. "Residence" is defined in Black's as a "place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode; house where one's home is; a dwelling house." *Id.* at 1308–9.[3] The terms of this restrictive covenant do not prohibit mobile homes and thus we will not enlarge the restriction by construing the words beyond their clear meaning. Strictly construing the covenant, it does not prohibit mobile homes.

Respondents then contend that if mobile homes are not prohibited, the $10,000 restriction on the mobile home's value must be looked at in present day dollars which is approximately $50,890.[4] We disagree.

The same rules apply to this portion of the restrictive covenant. If the grantor had wanted to tie the $10,000 figure to some type of index to allow for future inflation, he could

---

3. The American Heritage Dictionary (2nd Ed.1982) similarly defines "erect" as "to set up or establish" and "residence" as "the place in which one lives."

4. It is undisputed the mobile home is appraised at $13,049.

have easily done so. Since he did not, we do not think the figure should be amended to reflect its present day value.

**REVERSED.**

FINNEY, C.J., TOAL, WALLER and BURNETT, JJ., concur.