550 S.E.2d 299

### SOUTH CAROLINA DEPARTMENT OF NATURAL RESOURCES, Respondent,

v.

### The TOWN OF McCLELLANVILLE, a body politic, Petitioner.

### No. 25324.

Supreme Court of South Carolina.

Heard May 24, 2001
Decided July 23, 2001.

---

the Court must find the case was properly submitted to the jury. *State v. Pinckney,* 339 S.C. 346, 529 S.E.2d 526 (2000).

618

Frances I. Cantwell and Carl W. Stent, of Regan, Cantwell & Stent, of Charleston, for petitioner.

James A. Quinn, of South Carolina Department of Natural Resources, of Charleston; and Buford S. Mabry, Jr., Paul S. League, and Susan S. Quinn, of South Carolina Department of Natural Resources, of Columbia, for respondent.

BURNETT, Justice:

This case involves the interpretation of a restriction contained in a deed of land from the Department of Natural Resources (DNR) to the Town of McClellanville (the town). The Court of Appeals held the town could not charge a permit fee for access to the property. *South Carolina Dep't of Natural Resources v. Town of McClellanville*, Op. No.2000–UP–165 (Ct.App. filed Mar. 6, 2000). We reverse.

## FACTS

In 1991, DNR deeded a 4.27 acre tract of land to the town. This transfer was part of a land swap between the state and federal governments to enable the town to qualify for federal funds to repair the town hall, which was damaged by Hurricane Hugo. The parcel included the town hall, a fire tower, a boat ramp, and a parking area. The deed contained a restriction providing that "the parking area and boat launching ramp shall remain accessible to and remain available for use by the public." At the time of the conveyance, no fee was charged for use of the boat ramp.

The town has a population of about 360 and an annual budget of less than $200,000, $75,000 to $80,000 of which is dedicated to the fire department. During the period after the town took title to the land, use of the boat ramp and parking area increased dramatically. In 1995, Charleston County Public Works, which had previously provided maintenance for the facilities, notified the town it was unable to continue to provide that assistance. The town commissioned a study of

the facilities and a committee held public hearings to determine the best way to fund maintenance of the ramp.

In response to the committee's findings, the town enacted an ordinance requiring users of the boat launching ramp to obtain a permit. For $40.00 for town residents and $90 for non-residents, the holder of a permit receives 24–hour, 365–day use of the boat launching ramp and parking lot for one year. All revenue from the permits is placed into a restricted account to be used by the town "for the sole purpose of improving, operating and maintaining the boat ramp and related parking area ... and for reasonable administrative costs associated therewith."

DNR sought an injunction to prohibit enforcement of the ordinance, claiming the boat ramp fee violated the restrictive covenant contained in the deed. In the short period of time between the ordinance's enactment and the issuance of a preliminary injunction enjoining its enforcement, the town issued permits to 88 residents and 304 non-residents.

The case was referred to the Master–in–Equity, who refused DNR's request for a permanent injunction. The Master ruled the ordinance did not violate the deed. The Master reasoned the deed did not address how the facilities were to be operated or maintained, but "merely requires that the public have access to these facilities." The Master refused to read restrictions into the deed which "DNR could have effortlessly written in itself." The Circuit Court affirmed, and the Court of Appeals reversed.

## ISSUE

Did the Court of Appeals err in holding the town's ordinance establishing a boat launching permit fee violated the covenant in the deed by which the town acquired title?

## DISCUSSION

The town argues the Court of Appeals erred in holding the town's ordinance establishing a boat launching permit fee violated the covenant contained in the deed. The town asserts the language of the deed is ambiguous, and, even if unambigu-

ous, the intent attributed to the parties does not comport with the language used. We agree.

■■■■ An action to enforce restrictive covenants by injunction is in equity. *Taylor v. Lindsey*, 332 S.C. 1, 3, n. 2, 498 S.E.2d 862, 864, n. 2 (1998). On appeal of an equitable action tried by a Master, the Court can find facts in accordance with its own view of the evidence. *Id.; Townes Assoc. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). However, a Master's findings, concurred with by the circuit court, will not be disturbed on appeal unless without evidentiary support. *Townes Assoc.*, 266 S.C. at 86, 221 S.E.2d at 775–76.

■■■■ We recently explained the rules for interpreting restrictive covenants in South Carolina:

Restrictive covenants are contractual in nature, so that the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document. The court may not limit a restriction in a deed, *nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written.* It is still the settled rule in this jurisdiction that restrictions as to the use of real estate should be strictly construed and *all doubts resolved in favor of free use of the property,* subject, however, to the provision that this rule of strict construction should not be applied so as to defeat the plain and obvious purpose of the instrument. It follows, of course, that where the language of the restrictions is equally capable of two or more different constructions that construction will be adopted which least restricts the use of the property. A *restriction on the use of property must be created in express terms or by plain and unmistakable implication,* and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property.

*Taylor,* 332 S.C. at 4–5, 498 S.E.2d at 863–64 (emphasis added) (internal quotations and citations omitted). In *Taylor,* we refused to enlarge a restrictive covenant beyond its plain language in order to prohibit the erection of mobile homes.

■ The deed at issue in this case contained the restriction that "the parking area and boat launching ramp shall remain accessible to and remain available for use by the public." The Court of Appeals held the word "remain" is unambiguous and means "to continue unchanged." According to the Court of Appeals, "[t]he only reasonable interpretation of the deed[ ] is that the public's access was to continue unchanged and the availability for use by the public was to continue unchanged." Thus, "[a]ny restrictions imposed by the Town on the public's access to the Landing or on the Landing's availability for use by the public are forbidden."

■ We agree with the Court of Appeals the covenant is unambiguous; however, we think the "only reasonable interpretation of the deed," would not prohibit the town from charging a permit fee. A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation. *Hawkins v. Greenwood Development Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997) (*citing* 17A Am.Jur.2d Contracts § 338, at 345 (1991)). It is a question of law for the court whether the language of a contract is ambiguous. *Id.* Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties. *Id.* The determination of the parties' intent is then a question of fact. *Id.* On the other hand, the construction of a clear and unambiguous deed is a question of law for the court. *Gardner v. Mozingo*, 293 S.C. 23, 25, 358 S.E.2d 390, 392 (1987).

Although the word "remain" read alone might be considered ambiguous, the covenant as a whole is not. Nothing in the plain language of the deed prohibits the town from requiring a permit or charging a fee to use the facilities. Furthermore, even if the covenant is ambiguous, the Court of Appeals' construction does not comport with the rules in *Taylor*. The Master stated, and we agree, that the construction urged by DNR requires the Court to focus on the definition of one word, "remain," to the exclusion of the covenant as a whole. The deed provides that the parking area and boat launching ramp are to "remain accessible" and "remain available for use by the public." DNR does not, and cannot, argue the parking area and ramp are no longer accessible and available for use by the public. Thus it focuses on the word "remain" alone and

argues the scope of the public's access must remain unchanged from what it was before the town took title to the land.

The phrases "remain accessible" and "remain available for use by the public" do not equal "remain free and unrestricted."[1] The Court of Appeals' interpretation of the deed "enlarg[es the restriction] ... beyond the clear meaning of its terms." *Taylor*, 332 S.C. at 4, 498 S.E.2d at 864. The Court of Appeals held "[a]ny restrictions imposed by the Town on the public's access to the Landing or on the Landing's availability for use by the public are forbidden" by the deed. We do not interpret the deed as prohibiting the town from imposing any restrictions whatsoever on the public's use of the ramp in response to unforeseen future needs. Under the Court of Appeals' interpretation, the town could never limit the hours of operation of the facilities, for example, in response to crime, or restrict the size of watercraft for safety purposes. Nothing in the plain language of the deed extinguishes the town's ability to manage its own property to protect the public welfare.

DNR relies on *State v. Hardee*, 259 S.C. 535, 539, 193 S.E.2d 497, 499 (1972), for the proposition that "[a] deed or grant by the State of South Carolina is construed strictly in favor of the State and general public and against the grantee." In *Hardee*, the Court was called upon to determine whether the State or the grantee held title to land below the high-water mark on a tidal navigable stream. *Hardee* has little application to the instant case. *Hardee* was a "public trust" doctrine case, dealing with very different issues than those presented here. In particular, *Hardee* did not concern the construction of a restrictive covenant. Moreover, *Hardee* involved rules specifically applicable when the State grants land to private individuals. Here, the land at issue is still publicly held. Finally, the rule in *Hardee* is based "on the ground that the grant is supposed to be made at the solicitation of the grantee, and the form and terms of the particular instrument of grant proposed by him and submitted to the government for its allowance." *Id.* (quoting *State v. Pacific*

---

1. It might be possible for the town to charge a fee so exorbitant or impose restrictions so unreasonable that the facilities are arguably no longer accessible or available to the public. However, in this case, we find the permit fee is reasonable.

*Guano Co.,* 22 S.C. 50 (1884)). Here, the deed and restrictions were drafted by DNR. This case does not present the type of situation contemplated in *Hardee* that would justify reversing the usual rules of construction. DNR asks this Court to read into a deed it drafted restrictions not "created in express terms or by plain and unmistakable implication." *Taylor,* 332 S.C. at 5, 498 S.E.2d at 864. We instead resolve all doubts "in favor of the free use of property." *Id.*

■ Finally, DNR suggests the town's reasons for enacting the ordinance are pretextual. We disagree. The town made extensive findings of fact concerning the need for the present ordinance. Even if the members of Town Council secretly harbor a hope that the permit fee will reduce the number of people who use the facilities, this subjective desire would not invalidate an otherwise valid ordinance. *See Columbia Ry., Gas & Elec. Co. v. Carter,* 127 S.C. 473, 121 S.E. 377, 379 (1924) (court cannot speculate as to motives of the Legislature); *Pressley v. Lancaster County,* 343 S.C. 696, 542 S.E.2d 366 (2001) (courts should not inquire into motivation behind a governmental body's decision on the use of land). Moreover, the record does not support a finding the ordinance has had a chilling effect on public use of the facilities.

■ DNR further suggests other means the town could employ to address the problems created by increased use of the facilities. These arguments go to the wisdom of the legislation, and are irrelevant to the issue of the proper construction of the deed. *See Laird v. Nationwide Ins. Co.,* 243 S.C. 388, 395, 134 S.E.2d 206, 209 (1964) (responsibility for the wisdom of legislation rests with the Legislature). DNR's argument concerning its offer of funds to upgrade the facilities is similarly misleading. The availability of other means of funding is irrelevant to the issue of whether the town may impose a fee under the terms of the restrictive covenant.

**REVERSED.**

TOAL, C.J., and MOORE, WALLER and PLEICONES, JJ., concur.