Butler v. Stewart

THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Doris R. Butler, Curtis and Jane Bolton, Rutledge and Ruth Morris, William 
 B. Taylor, James and Betty Harrell, and J. D. and Margie Brannon,       
Respondents,
 
 
 

v.

 
 
 
Mark Stewart,       
Appellant.
 
 
 

Appeal From Spartanburg County
 Roger L. Couch , Master-In-Equity

Unpublished Opinion No. 2004-UP-060
Heard January 13, 2004  Filed January 
 29, 2004

 
AFFIRMED

 
 
 
H. Michael Spivey, of Mauldin, for Appellant.
Phillip K. Sinclair, of Spartanburg, for Respondents.
 
 
 

PER CURIAM:  Respondents brought this action 
 against Mark Stewart to enforce restrictive covenants prohibiting the commercial 
 use of residential property in the LaMotte Shores subdivision of Spartanburg 
 County.  The master-in-equity found Stewarts use of the property for business 
 purposes violated the restrictive covenants, and Stewart appeals.   We affirm. 

FACTS
The LaMotte Shores subdivision was established 
 in the early 1950s.  A plat and restrictive covenants for the subdivision are 
 recorded in the Spartanburg County RMC office.  Respondents and Stewart all 
 own property in the subdivision.  Stewart purchased his lot on North Blackstone 
 Road in June 2000.  
The restrictive covenants state all of 
 the lots are residential and prohibit  any noxious or offensive trade on the 
 premises.  The covenants provide in relevant part as follows:

2.  All lots tract [sic] shall be known and described as residential 
 lots.  No structures shall be erected, altered, placed or permitted to remain 
 on any lot, other than one detached single family dwelling not to exceed 2½ 
 stories high and a private garage for not more than 2 cars and servants[] quarters 
 or storage.
. . . .
4.  No noxious or offensive trade shall be carried on upon 
 any lot; nor shall anything be done thereon which may be or become an annoyance 
 to the neighborhood.  

At the hearing in this matter, Stewart 
 admitted that he had converted the residence in North Shores subdivision to 
 primarily business use.  Stewart operated a real estate business that bought 
 properties, renovated them, and then resold them.  Stewart testified that on 
 an average day, there were three persons, including himself, working on the 
 premises, and that he saw a couple of clients there each day.  Stewart maintained, 
 however, that only five per cent of his business was handled out of the building 
 and that he was unaware of the restrictive covenants at the time he purchased 
 the lot.  Stewart stated he was notified of the covenants by several other landowners 
 once they realized he intended to use his property for commercial, rather than 
 residential, purposes.  Stewart testified that, although he did not reside at 
 the property, his brother occasionally used the property when he was in town.  

Stewart maintained his business was not 
 increasing traffic or causing other problems in the neighborhood, and that it 
 was not a noxious or offensive trade as prohibited by the covenants.  Additionally, 
 he asserted many major businesses now surround the subdivision and these businesses 
 have more of an impact upon the neighborhood than his business.  Stewarts property, 
 however, is apparently the only one within the subdivision to be used 
 almost exclusively for business purposes.  
The master found that the prohibition 
 in Paragraph 4 of the covenants against carrying on any noxious or offensive 
 trade on the premises was not intended to change the clear intent of the covenants 
 which limit[] these lots to single family residential use.  The master reasoned 
 that [a] person living in a residence might perform some incidental work related 
 to his trade or business.  The master found the restrictive [c]ovenants were 
 intended to protect the neighborhood from such changes as have occurred outside 
 the neighborhood without the benefit of the restrictions.  The master concluded 
 that Stewarts conversion of his property from a residential lot to a business 
 property was in violation of the restrictive covenants and restrained Stewart 
 from further use of the property for business purposes. 
STANDARD OF REVIEW
An action to enforce restrictive covenants by 
 injunction is in equity.  South Carolina Dept of Natural Resources v. Town 
 of McClellanville, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001).  On appeal 
 of an equitable action tried by a Master, the Court can find facts in accordance 
 with its own view of the evidence.  Id.
LAW/ANALYSIS
Stewart contends the master erred in finding 
 his use of the property for business purposes violates the subdivisions restrictive 
 covenants.  We disagree.
 Restrictive covenants are contractual 
 in nature, so that the paramount rule of construction is to ascertain and give 
 effect to the intent of the parties as determined from the whole document.  
 Palmetto Dunes Resort v. Brown, 287 S.C. 1, 6, 336 S.E.2d 15, 18 (Ct. 
 App. 1985).
The court may not limit a restriction in a deed, 
 nor, on the other hand, will a restriction be enlarged or extended by construction 
 or implication beyond the clear meaning of its terms even to accomplish what 
 it may be thought the parties would have desired had a situation which later 
 developed been foreseen by them at the time when the restriction was written.  
 Taylor v. Lindsey, 332 S.C. 1, 4, 498 S.E.2d 862, 864 (1998) (quoting 
 Forest Land Co. v. Black, 216 S.C. 255, 262, 57 S.E.2d 420, 424 (1950)). 

It is still the settled rule in this jurisdiction 
 that restrictions as to the use of real estate should be strictly construed 
 and all doubts resolved in favor of free use of the property, subject, however, 
 to the provision that this rule of strict construction should not be applied 
 so as to defeat the plain and obvious purpose of the instrument.  Id. 
 

Words of a restrictive covenant will 
 be given the common, ordinary meaning attributed to them at the time of their 
 execution.  Id. at 4, 498 S.E.2d at 863.  A restriction on the use 
 of property must be created in express terms or by plain and unmistakable implication, 
 and all such restrictions are to be strictly construed, with all doubts resolved 
 in favor of the free use of property.  Hamilton v. CCM, Inc., 274 S.C. 
 152, 157, 263 S.E.2d 378, 380 (1980) (internal citation omitted).  
Stewart first argues Paragraph 4 of the 
 covenants, which prohibits any noxious or offensive trade . . . upon any lot, 
 contemplates allowing a business to operate within the subdivision so long as 
 the business is not noxious or offensive.  Stewart asserts that, since his business 
 is not noxious or offensive, his commercial use of the property does not violate 
 the covenants.  
When reading the document as a whole, 
 however, Paragraph 2 clearly intends to limit the primary use of the lots to 
 residential purposes as it states all lots shall be described as residential 
 lots and that only single-family dwellings can be maintained within the subdivision.  
 Thus, we agree with the masters finding that, in construing these two provisions 
 together, Paragraph 4 serves to further prohibit a property owner, who is already 
 using the lot for residential purposes, from having any noxious or offensive 
 trade conducted on the premises.  In this case, Stewart admitted that he never 
 lived at the home and that he used it for commercial purposes. 
Stewart next argues that the restrictive 
 covenants are invalid or unenforceable because his neighbors have violated the 
 covenants.  The main violation alleged by Stewart is the presence of a three-car 
 garage on one of the lots.  At trial, however, the testimony indicated the garage 
 was used as a two-car garage, with the third bay used only for storage.  Paragraph 
 2 of the covenants allows a private garage for not more than 2 cars and servants[] 
 quarters or storage.  This is not a significant change in the nature of the 
 neighborhood or a violation, however, that would render the covenants no longer 
 applicable to all property owners.  See, e.g., Sea Pines Plantation 
 Co. v. Wells, 294 S.C. 266, 270-71, 363 S.E.2d 891, 894 (1987) (finding 
 restrictive covenants were not arbitrarily applied and were valid and enforceable). 
Stewart further contends the neighborhood 
 has been significantly changed by the surrounding businesses such that the restriction 
 as to residential use is no longer valid.  While it is true that the area surrounding 
 the subdivision includes major companies and businesses, none are located in 
 the area covered by the restrictive covenants.  The restrictive covenants apply 
 solely to the area within the subdivision, and their enforcement is not dependant 
 on developments outside the subdivision.  We agree with the masters observation 
 that it is precisely due to the presence of the restrictive covenants that the 
 area within the subdivision has been protected from commercial growth, which 
 was the purpose of the restrictions.  For the foregoing reasons, the masters 
 decision is 
 AFFIRMED.
GOOLSBY and ANDERSON, JJ., and CURETON, A.J., 
 concur.