This case arises from a dispute over hunting rights reserved in a deed 
upon the sale of an 875 acre tract of undeveloped land 

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), 
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Marion T. Burnside, Jr., Marion T. Burnside, III, and David B. Burnside,       
Appellants,
 
 
 

v.

 
 
 
Mary Clare
Matthews,        Respondent.
 
 
 

Appeal From Fairfield County
Kenneth G. Goode, Circuit Court Judge

Unpublished Opinion No. 2005-UP-136
Submitted January 1, 2005  Filed February 
 24, 2005

AFFIRMED

 
 
 
Robert L. Widener and Celeste T. Jones, both of 
 Columbia, for Appellants.
Donald W. Harper, of Rock Hill, for Respondent.
 
 
 

PER CURIAM:  This case arises from a dispute 
 over hunting rights reserved by Appellants in a deed to a large tract of land 
 they sold.  Appellants brought this action for trespass and conversion, claiming 
 the present owner of the property infringed upon these hunting rights.  The 
 circuit court dismissed these claims on grant of summary judgment, finding the 
 Appellants had forfeited their hunting rights.  We affirm.
FACTS/PROCEDURAL HISTORY
The property at issue in this case is an 875 acre 
 tract of undeveloped land in Fairfield County.  Appellant Marion Burnside, Jr., 
 and the Burnside family had owned the property for many years and enjoyed using 
 it for hunting recreation.  In May 1980, Marion Burnside and two other family 
 members sold the property to the Catawba Newsprint Company, a timber company 
 later known as Bowater. [1]   The Burnsides, however, wanted to retain the 
 familys right to continue hunting and fishing on the land.  To this end, the 
 deed to Bowater included terms specifically reserving the hunting rights on 
 the property to the Burnsides:

Hunting rights on the above described 
 property are RESERVED by Marion T. Burnside, Jr. and his two sons, David B. 
 Burnside and Marion T. Burnside, III, and Ken Richmond for a period of 10 years 
 from the date of this deed; thereafter, Marion T. Burnside, Jr. and his two 
 sons reserve the right to lease the hunting rights on a year to year basis.  
 The consideration for the lease shall be equal to the amount of the previous 
 years property taxes. 

As provided in the deed, the Burnsides 
 held the hunting rights for the first ten years at no cost.  After this ten 
 year period expired in 1990, Bowater began the practice of annually sending 
 notice of the amount of property tax due to the Burnsides in April or May along 
 with a year long lease that would generally run from July 1st to June 30th.  
 Each year the Burnsides would execute the lease and return it with the rent 
 payment.  Often, this task was handled by John Jernigan, who served as 
 the agent of Marion T. Burnside, Jr., for purposes of managing the hunting rights 
 and wildlife on the property.  Jernigan would execute the yearly leases under 
 the name Burnsides Hunt Club or John Jernigan Hunt Club. 
In December 1997, Respondent Mary Clare 
 Matthews purchased the property from Bowater.  Matthews was aware of the Burnsides 
 hunting rights, and, without success, sought relinquishment of those rights.  
 At the time Matthews purchased the property, it remained subject to a hunting 
 rights lease between Bowater and the Burnsides (via the John Jernigan Hunt 
 Club), which expired in June 1998. 
In May or June of 1998, Jernigan contacted 
 Bowater to inquire about the property tax due in order that the hunting rights 
 lease could be executed for the next year.  Bowater informed Jernigan of the 
 sale to Matthews.  Appellants claimed Jernigan attempted to contact Matthews 
 about entering into a new lease for the 1998-1999 hunting season prior to the 
 expiration of the 1997-1998 lease with Bowater.  Matthews denied receiving any 
 such communication.  It is undisputed, however, that in May 1999nearly one 
 year after the previous lease expiredJernigan mailed Matthews a check for $1,486 
 to cover the taxes due on the property.  Matthews refused to accept the payment.  
 Matthews eventually changed the locks on the gates that provided access to the 
 property, and she also allowed others to hunt on the property. 
The Burnsides later brought this action 
 against Matthews alleging trespass and conversion of the Burnsides hunting 
 rights.  Matthews denied these allegations and counterclaimed for trespass and 
 slander of title.  The circuit court subsequently granted Matthews motion for 
 summary judgment on all claims, finding, inter alia, the Burnsides 
 had forfeited their hunting rights by failing to give notice of their intent 
 to exercise the lease option.  This appeal followed.
STANDARD OF REVIEW
In reviewing the grant of a summary judgment motion, 
 this court applies the same standard that governs the trial court under Rule 
 56(c), SCRCP.  Nexsen v. Haddock, 353 S.C. 74, 77, 576 S.E.2d 183, 185 
 (Ct. App. 2002).  Summary judgment is proper when there is no genuine issue 
 as to any material fact and the moving party is entitled to a judgment as a 
 matter of law.  Kirkman v. Parex, Inc., 356 S.C. 525, 527-28, 590 S.E.2d 
 36, 37 (Ct. App. 2003) (citing Rule 56, SCRCP, and South Carolina Prop. & 
 Cas. Guar. Assn. v. Yensen, 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct. 
 App. 2001)).  In determining whether summary judgment was proper, the court 
 views the evidence and the inferences that can be drawn therefrom in a light 
 most favorable to the non-moving party.  George v. Fabri, 345 S.C. 440, 
 452, 548 S.E.2d 868, 874 (2001).  
LAW/ANALYSIS
On appeal, the Burnsides assert several 
 alternative grounds they claim warrant a reversal of the circuit courts grant 
 of summary judgment in favor of Matthews.  For the reasons detailed below, we 
 reject all of these arguments.
I.  Exercise of Hunting Rights Under 
 the Terms of the Deed
The Burnsides first argue that, assuming 
 they failed to give timely notice to Matthews of their intent to lease the hunting 
 rights on the property at the end of their existing lease with Bowater, such 
 failure did not forfeit all future hunting rights under the deed.  We disagree.
The Burnsides contend the language in 
 the deed granting them the right to lease the hunting rights on a year to year 
 basis meant they had the option to lease the hunting rights every year, or 
 they could not lease one year but then lease the next yearin effect allowing 
 them to skip any year or years of their choosing, after which they could resume 
 the lease arrangement upon notice to the property owner.  Therefore, failure 
 to give notice for any one particular year would not operate to forfeit the 
 right for future years.  According to the Burnsides, even if this interpretation 
 were found to be incorrect by the fact finder at trial, their argument points 
 to an ambiguity in the terms of the lease that, at a minimum, gives rise to 
 a question of material fact sufficient to overcome Matthews motion for summary 
 judgment.  Looking, however, to the plain meaning of the hunting rights lease 
 and applying the well settled rules for construing restrictions in deeds, we 
 find no such ambiguity and no support for the interpretation of the lease terms 
 urged by the Burnsides.
The construction of a clear 
 and unambiguous deed is a question of law for the court.  Gardner v. Mozingo, 
 293 S.C. 23, 25, 358 S.E.2d 390, 392 (1987); see also Shipyard 
 Prop. Owners Assn v. Mangiaracina, 307 S.C. 299, 308, 414 S.E.2d 795, 
 801 (Ct. App. 1992). The court will neither limit a restriction in a deed nor 
 will the court enlarge or extend it by construction or implication beyond the 
 clear meaning of its terms even to accomplish what it thinks the parties would 
 have desired if they had foreseen the development of a particular situation.  
 Taylor v. Lindsey, 332 S.C. 1, 4, 498 S.E.2d 862, 864 (1998).   

It is still the settled rule 
 in this jurisdiction that restrictions as to the use of real estate should be 
 strictly construed and all doubts resolved in favor of free use of the property, 
 subject, however, to the provision that this rule of strict construction should 
 not be applied so as to defeat the plain and obvious purpose of the instrument. 

Id.  Further, [a] 
 restriction on the use of property must be created in express terms or by plain 
 and unmistakable implication, and all such restrictions are to be strictly construed, 
 with all doubts resolved in favor of the free use of property.  Id. 
 at 5, 498 S.E.2d at 864 (quoting Hamilton v. CCM, Inc., 274 S.C. 152, 
 157, 263 S.E.2d 378, 380 (1980)).  In interpreting options or rights to extend 
 a lease, our courts have consistently held that such options or rights are to 
 be strictly construed against the party claiming the option. See 33 
 Flavors Stores of Virginia, Inc. v. Hoffmans Candies, Inc., 296 S.C. 37, 
 40, 370 S.E.2d 293, 295 (Ct. App. 1988) (holding that because of its unilateral 
 nature, an option to renew a lease is strictly construed against the party claiming 
 the option) (citing Southern Silica Mining & Mfg. Co. v. Hoefer, 
 215 S.C. 480, 56 S.E.2d 321 (1949)).
We find no provision 
 in the lease termsexplicit or impliedsuggesting the Burnsides could unilaterally 
 choose to exercise their option to lease the hunting rights to the property 
 any year of their choosing for perpetuity.  The terms of the deed granting the 
 Burnsides the right to lease the hunting rights on a year to year basis plainly 
 mean that the Burnsides could renew or extend their right to hunt on the property 
 in consecutive years following the expiration of the initial ten year period 
 reserving the hunting rights.  To hold otherwise would place a severe encumbrance 
 upon the use and alienability of the property for an indefinite period of time.  
 Absent explicit language in the terms of the deed indicating the parties intended 
 such an expansive encroachment upon the rights of the immediate grantee and 
 all future owners of the underlying fee, we decline to adopt such an interpretation.
II.  Purported 
 Questions of Fact Concerning Timely Notice
The Burnsides alternatively 
 argue that they did in fact provide Matthews with sufficient notice of their 
 intent to extend or renew their hunting rights lease prior to the expiration 
 of their existing lease with Bowater for the 1997-1998 hunting season.  In support 
 of this argument, the Burnsides rely upon three pieces of evidence that they 
 claim establish their attempts to give timely notice to Matthews: the deposition 
 and affidavit of John Jernigan and the check for the property tax payment Jernigan 
 mailed to Matthews in May 1999.  At a minimum, they claim this evidence created 
 a question of material fact not ripe for disposition at the summary judgment 
 stage.  We address the sufficiency of each of these items separately.  
A.  Jernigans Deposition
The Burnsides argue Jernigans deposition, when 
 viewed in a light most favorable to them, creates an issue of fact as to timely 
 notice.   We disagree.  Contrary to the Burnsides characterization of Jernigans 
 deposition testimony, we find no statement in this testimony indicating Jernigan 
 contacted Matthews prior to mailing the check for the property tax payment in 
 May 1999approximately ten months after the last existing lease had expired.  
 Accordingly, even when viewing Jernigans deposition in a light most favorable 
 to the Burnsides as we must, we cannot discern from this testimony any genuine 
 issue of material fact regarding timely notice. 
B.  Jernigans Affidavit
The Burnsides submitted an affidavit of John Jernigan 
 to the circuit court in which Jernigan states that he attempted to call Ms. 
 Matthews over a three-to-four month time span, without success.  The circuit 
 court found the submission of the affidavit to be untimely and refused to consider 
 it.  The Burnsides contend this refusal was an abuse of discretion.
We find no error in the 
 circuit judges rejection of this affidavit. Rule 56(c), SCRCP specifies that 
 when filing papers in response to motions for summary judgment, [t]he adverse 
 party may serve opposing affidavits not later than two days before the hearing. 
 Our supreme court has ruled that the trial court may, in its discretion, refuse 
 to consider materials that were not timely served such that the opposing party 
 had no time to prepare a response. Black v. Lexington Sch. Dist. No. 2, 
 327 S.C. 55, 60, 488 S.E.2d 327, 329 (1997) (holding that the trial court did 
 not abuse its discretion in refusing to consider an affidavit filed on the date 
 of the hearing when the appellants lawyer admitted he failed to serve the affidavit 
 within the time required by Rule 56 and failed to assert any good excuse for 
 that failure).  
In the present case, the 
 affidavit was submitted two weeks after the summary judgment hearing.  
 Indeed, the affidavit was submitted after the circuit court had notified 
 the parties by letter that it intended to grant Matthews summary judgment motion.  
 As the circuit court explained in denying the Burnsides motion to alter or 
 amend judgment, the Burnsides attorney neither offered to submit nor requested 
 leave to submit the affidavit.  Moreover, we concur in the circuit courts assessment 
 that the Burnsides were clearly aware that the matter involved in the affidavit 
 was a basis for Matthews summary judgment motion, rendering the delay in producing 
 the affidavit without any legitimate explanation or excuse.  Accordingly, we 
 find no abuse of discretion in the circuit courts refusal to consider the affidavit. 

C.  May 1999 Check to Matthews
The Burnsides next argue that the check Jernigan 
 sent to Matthews in May 1999 was sufficient to create a genuine issue of material 
 fact as to timely notice.  This argument, however, rests upon the premise that 
 the terms of the deed entitle the Burnsides to exercise their right to lease 
 the hunting rights in any year of their choosing, even after the expiration 
 of the existing lease.  As discussed in Section I, supra, we reject this 
 interpretation of the deed language.  Accordingly, the claim that a check mailed 
 over ten months after the expiration of the existing lease could serve as effective 
 notice of the exercise of the hunting rights lease is without merit.  Thus, 
 the circuit court properly determined the check raised no genuine issue of material 
 fact as to whether notice was timely provided.
III.  Course of Dealing
The Burnsides also argue 
 the circuit court erred in granting summary judgment because Matthews owed a 
 duty to the Burnsides to notify them of the lease amount based on a course of 
 dealing between Bowater and the Burnsides under the deed.  
This argument was not raised to the circuit court.  
 No mention is made of it in the complaint, in the Burnsides memorandum in opposition 
 to summary judgment, or in their motion to amend or alter the judgment.  To 
 be preserved for appellate review, an issue must have been raised to and ruled 
 upon by the trial court.  United Student Aid Funds, Inc. v. South Carolina 
 Dept of Health and Envtl Control, 356 S.C. 266, 273, 588 S.E.2d 599, 602 
 (2003).  Because the Burnsides failed to raise this argument prior to appeal, 
 this issue is not properly before us.  
IV. Additional Issue Raised on Appeal
In its order granting Matthews motion 
 for summary judgment, the circuit court held: 

Even if the Court construes the 
 deed to create a year to year lease rather than a right or option to lease, 
 the failure of the Plaintiffs to pay or tender rent for a period of ten months 
 constitutes a material breach of the lease resulting in a forfeiture even under 
 the stringent requirements of Kiriakides v. United Artists Communications, 
 312 S.C. 271, 440 S.E.2d 364 (1994).  

On appeal, the Burnsides 
 assert this finding of the circuit court was error.  However, we find summary 
 judgment was properly granted on the grounds that notice was insufficient and 
 no lease relationship was created between the Burnsides and Matthews.  Accordingly, 
 we need not reach this alternative ground regarding whether the Burnsides actions 
 constituted a material breach in the event such a lease was found to exist. 

CONCLUSION
We find the circuit court properly determined 
 that the Burnsides failed to notify Matthews of their intent to extend, renew, 
 or otherwise exercise their option to lease the hunting rights to the property 
 and therefore forfeited their right to do so in the future.  Concomitantly, 
 we find that no genuine issue of material fact precluded this determination 
 at the summary judgment stage.  Appellants other arguments concerning the legal 
 effects of a purported course of dealing between the parties and material breach 
 of the lease are either unpreserved or unnecessary to our decision today.  Accordingly, 
 the circuit courts order granting summary judgment is
 AFFIRMED.
HUFF, KITTREDGE and BEATTY, JJ., concur.         

 
      
 [1] For clarity and ease of reference we will refer to the company as Bowater 
 throughout this opinion.