THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Heritage Plantation Owners Association, Inc., Respondents,
v.
William Paone and Janice Paone, Appellants.
 
 
 

Appeal From Georgetown County
Benjamin H. Culbertson, Master-in-Equity

 Unpublished Opinion No. 2006-UP-001
Heard October 12, 2005  Filed January 4, 2006   

AFFIRMED

 
 
 
Mark Andrew Brunty, of Myrtle Beach, for Appellants.
Richard M. Lovelace, Jr of Conway; Robert Norris Hill , of Newberry, for Respondents.
 
 
 

PER CURIAM:  In this action to enforce restrictive covenants, William and Janice Paone appeal the master-in-equitys order requiring them to remove a flagpole and basketball goal from their property and pay Heritage Plantation Owners Association, Inc. $27,575.00 in fines and $15,054.83 in attorneys fees and costs.  We affirm.  
FACTS
The Paones began construction of their house in Heritage Plantation in late 1999 or early 2000.  The Heritage Plantation Declaration of Covenants and Conditions and Restrictions requires owners to receive written approval by the Heritage Plantations Architectural Review Board (ARB) for all construction, including landscaping.  In addition to their house plans, the Paones submitted their landscaping and drainage plans to the ARB.  Throughout the landscaping project, the ARB required numerous changes to the plans.  At the Paones direction, the ARB conferred with the Paones general contractor, Bruce Carrell, who had built numerous homes in Heritage Plantation.  On July 10, 2000, the ARB held a special meeting to consider the Paones construction.  In a letter sent that day, the ARB required several revisions to the landscaping plan.  The Paones landscaper claimed that on July 20, 2000, he submitted a revised landscaping plan for the meeting that was to be held that day.  Those plans included a flagpole.  The agenda and minutes of the ARBs July 20 meeting do not indicate that the Paones landscaping was discussed at that meeting.  
At the August 3, 2000 meeting, the ARB again considered the Paones landscape plan.  It approved the plan subject to completion of the installation of landscaping material on the exterior side of the north fence.  After this meeting, members of the ARB noticed the flagpole and a portable basketball goal on the Paone property.  The ARB sent Carrell a letter on August 24, 2000 advising him that although flagpoles may be approved, the ARB must approve the location prior to installation.  It stated the current flagpole location was not acceptable.  The ARB also advised Carrell that portable basketball goals are not permitted and basketball goals must be permanently installed.  It directed Carrell to re-submit plans showing the permanently installed basketball goal and the new location of the flagpole to the ARB for approval.  In a letter dated September 5, 2000, Carrell replied that a revised landscape plan with the location of the flagpole was submitted to the ARB on July 20.  It enclosed a copy of the plan.  He also explained the Paones had purchased the basketball goal before they understood that only stationary goals were permitted.  He asked that the basketball goal be approved since it would be screened by landscaping.   
The ARB responded that prior to Carrells letter of September 5, 2000, it had never received a landscaping plan indicating a flagpole installation and it had not approved such a plan.  The ARB informed Carrell that it had eleven copies of plans for landscape, drainage, irrigation and re-submittals, but the only one showing a flagpole was the one Carrell submitted on September 5, 2000.  It requested Carrell submit a site plan with an alternate location for the flagpole that is not directly in front of the home and is some distance from the street.  In addition, the ARB did not approve the request for the basketball goal unless it received a letter verifying that the goal is permanently installed.  The ARB cautioned that Carrell must submit both an alternate flagpole location and the basketball goal verification before the next ARB meeting on September 21, 2000 and that [f]ailure to do so will cause this property to be in violation of the Covenants and Guidelines and may incur fines.  
The Paones attorney subsequently wrote to the ARB maintaining that the landscaping plans showing the flagpole location were dropped off on July 20, 2000 and this was the plan that was approved on August 3, 2000.  The attorney asserted the Paones had no plans for removal of the flagpole at that time.  
The Heritage Plantation Owners Association subsequently brought this action seeking an injunction requiring the removal of the flagpole and portable basketball goal, payment of cumulative fines for violation of the covenants of $25 a day, retroactive to January 1, 2001, and attorneys fees and costs.  In their answer and counterclaim, the Paones asserted that they submitted landscapes to the ARB containing the flagpole and the ARB approved those plans.  They requested a return of their $2,500.00 deposit, damages for their travel costs, lost wages, and emotional distress, and attorneys fees and cost.
The trial court ordered the Paones to immediately take down the flagpole and not re-erect it without written approval by the ARB.  It also ordered the Paones to remove the portable basketball goal from view of anyone within Heritage Plantation other than themselves.  Although the court found the flagpole and basketball goal were separate violations of the covenants, it imposed a single fine of $25.00 a day from August 15, 2000 through the date of the hearing, for a total of $27,575.00.  It also awarded the Association $15,054.83 in attorneys fees and costs.  The Paones filed a motion to alter or amend the judgment, which the trial court denied.  This appeal followed.   
STANDARD OF REVIEW
An action to enforce a restrictive covenant is in equity.  South Carolina Dept of Natural Res. v. Town of McClellanville, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001).  In an appeal from an equitable action, tried by a special referee alone, the appellate court has jurisdiction to find facts in accordance with our own view of the preponderance of the evidence.  Id.  The court should not, however, disregard the findings of the special referee, who was in a better position to weigh the credibility of witnesses.  Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1990). 
LAW/ANALYSIS
I.  Existence of violations
The Paones argue the facts of this case do not support the masters ruling because the evidence reveals the Paones plan was submitted and approved.  We disagree.  
The Paones landscape designer, Brad Ingram testified that after the ARBs letter of July 12, 2000 he created a revised landscaping plan.  This plan included the flagpole.  Ingram explained that normally he would deliver plans to the builder who would in turn submit the plans.  In this instance, he received a call from the Paones builder, Bruce Carrell on the morning of July 20 wanting to know if there was any way the plans could be submitted that day in order that they be considered at the ARBs meeting that evening.  Ingram copied the plans himself at the sales office at Heritage Plantation and then delivered the plans to the receptionist at the owners clubhouse by 11:30 a.m.  The revised plans, however, were not considered at the ARBs meeting on July 20.  
Art Kent, a member of the ARB during the time the Paones were constructing their home, claimed the ARB never saw the revised plans showing the flagpole location until Carrells letter dated September 5, 2000.  He asserted that the ARB went through all of its files and did not find the plans Ingram claimed to have delivered on the July 20.  Kent averred the ARB had never lost any correspondence before when dealing with 350 homes.  He explained that when the ARB approved the Paones basic landscaping plan on August 3, 2000, it considered the written plans that had been submitted for the July 12, 2000 meeting and Carrells oral agreement to make the changes required by the ARB.  
Importantly, on August 8, 2000 Carrell submitted a request to add the basketball goal to the Paones yard.  The attached landscaping plan that showed the addition of the basketball goal did not include the flagpole.  Soon after the controversy over the flagpole and basketball goal arose, Carrell wrote to the ARB distancing himself from the matter and instructing the ARB to work directly with Mr. Paone on these issues.  In the letter, Carrell stated, Neither the flagpole nor the basketball goal were part of our construction agreement, and we did not arrange for either to be installed.  However, Carrell did note that he believed the ARBs letter of August 3, 2000 had approved the revised landscape plan Ingram claimed to have submitted on July 20, 2000, which showed the basketball goal.   
This case revolves on the credibility of the Associations witnesses, who claimed the ARB never saw or approved landscaping plans showing the flagpole, and the Paones witness Ingram, who claimed to have submitted the plans.  We give deference to the masters factual findings because he had a better vantage point from which to judge the witnesses credibility.  See Patterson v. Goldsmith, 292 S.C. 619, 626, 358 S.E.2d 163, 167 (Ct. App. 1987) ([T]he conclusions of the master who observed the demeanor and appearance of the witnesses have peculiar value on questions of credibility of witnesses.).  Giving such deference to the master, we find the ARB never considered or approved landscaping plans that showed a flagpole.  Thus, the Paones violated the covenants by installing the flagpole without the ARBs approval.  
Furthermore, the Paones acknowledged at oral argument they waived any argument concerning placement of the portable basketball goal on their property, which constituted a violation of the covenants.  Accordingly, we find no error in the masters conclusion that the Association had established two violations of the covenants beginning at or about August 15, 2000.
II.  Fines as a penalty
The Paones argue the amount of the fines awarded by the master was grossly disproportionate to any damage and is an unenforceable penalty.  We find this issue is not properly before this court.  
In their complaint, the Association asserted it was entitled to a cumulative fine totaling $25.00 a day.  Thus, the Paones were aware that the Association was seeking a significant award of damages from the cumulative fines at the time of the hearing; yet the Paones failed to argue such that the fines were an unenforceable penalty until their motion to alter or amend.  A party cannot raise an issue for the first time in a Rule 59(e) motion when the issue could have been raised at trial.  MailSource, LLC v. M.A. Bailey & Assoc., Inc., 356 S.C. 370, 588 S.E.2d 639 (Ct. App. 2003).  Thus, this issue is not preserved for our review.  See Dixon v. Dixon, 362 S.C. 388, 608 S.E.2d 849 (2005)(issue raised for first time in Rule 59, SCRCP, motion is not preserved for review).
III.  Reasonableness of attorneys fees
The Paones argue the master erred by not addressing the Jackson v. Speed[1] factors when determining reasonable attorneys fees.  They assert that the case must be remanded for a consideration of the attorneys fee request.  We disagree. 
There are six factors for the trial court to consider when determining an award of attorneys fees:  (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services.  Jackson v. Speed, 326 S.C. at 308, 486 S.E.2d at 760.  
In his order the master held that the Associations attorneys itemized statement of fees and costs and an affidavit from another real estate attorney averring the fees and costs were reasonable and satisfied him that all of the standards in the cannons of ethics with regard to attorneys fees and their reasonableness have been met in the examination and scrutiny of [the Associations attorneys] bill for services. The master awarded the Association $12,164.50 in attorneys fees and $2,890.00 in costs.   
Although the master did not list the factors he considered, the master did state he considered factors set out in the cannons of ethics.

The factors for determining the reasonableness of fees set forth in Rule 1.5 of the Rules of Professional Conduct, Rule 407, SCACR, include the same factors as those set forth in Jackson v. Speed. [2] 

Thus, in considering the factors set forth in the Rule 1.5 of the Rules of Professional Conduct, the master considered the Jackson v. Speed factors as well as other factors.  We find no abuse of discretion in the masters award of fees.  
IV.  Remedies
The Paones argue the covenants restrict the remedies to either imposition of fines or injunctive relief.  We disagree.  
As restrictive covenants are contractual in nature, the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document.  Taylor v. Lindsey, 332 S.C. 1, 4, 498 S.E.2d 862, 863 (1998).  The court in Taylor elucidated:

The court may not limit a restriction in a deed, nor, on the other hand, will a restriction be enlarged or extended by construction or implication beyond the clear meaning of its terms even to accomplish what it may be thought the parties would have desired had a situation which later developed been foreseen by them at the time when the restriction was written.  It is still the settled rule in this jurisdiction that restrictions as to the use of real estate should be strictly construed and all doubts resolved in favor of free use of the property, subject, however, to the provision that this rule of strict construction should not be applied so as to defeat the plain and obvious purpose of the instrument.  

Id.  (internal quotations and citations omitted).
Article 11.04 of the Covenants, titled Enforcement, provides in part:  Failure to comply [with the covenants] shall be grounds for imposing fines, for suspending voting rights, or for instituting and action to recover sums due, for damages, and/or for injunctive relief . . . .  This section further provides:  Should Declarant or the Association employ legal counsel to enforce any of the foregoing, all costs incurred in connection with such enforcement, including court costs and reasonable attorneys fees, shall be paid by the violating owner. . . .[I]t is hereby declared that any breach [of the covenants, bylaws or rule or regulations of the Association] may not adequately be compensated by recovery of damages, and that  . . . the Association . . ., in addition to all other remedies, and not by way of limitation, may require and shall be entitled to the equitable remedies of specific performance and of injunction to restrain any such violation or breach or any threatened violation or breach.  
Sections10.03 and 10.04 also authorize the ARB to enjoin further construction and to require removal or correction of any work already in place that does not comply with approved plans and specifications.  
Considering the plain language of the Declaration, we find the Association clearly had the right to impose fines and then to bring an action to recover the sums due from the aggregated fines.  In addition, Article 11.04 authorizes the Association to receive attorneys fees and costs from its enforcement action.  Furthermore, this section provides in addition to all other remedies the Association is entitled to an injunction to restrain violations of the covenants.  Accordingly, we find the master did not err in awarding the Association damages from the fines due and injunctive relief.  
CONCLUSION
For the above reasons, the order of the master is 
AFFIRMED.
ANDERSON, HUFF, and WILLIAMS, JJ., concur.

[1] 326 S.C. 289, 486 S.E.2d 750 (1997).    
[2] We note that Rule 1.5 of the Rules of Professional Conduct applies to the reasonableness of fees between an attorney and client and not to the award of fees to an opposing party.