710 S.E.2d 90

**Joseph S. MATSELL and Pamela A. Matsell, Respondents,**

v.

**CROWFIELD PLANTATION COMMUNITY SERVICES ASSOCIATION, INC., Appellant.**

No. 4831.

Court of Appeals of South Carolina.

Submitted Oct. 1, 2010.

Decided April 27, 2011.

Rehearing Denied June 23, 2011.

66

D. Gary Lovell and Douglas W. MacKelcan, both of Charleston, for Appellant.

David B. Wheeler and Trudy H. Robertson, both of Charleston, for Respondents.

KONDUROS, J.

Crowfield Plantation Community Services Association (the Association) appeals the trial court's finding the Hamlets of Crowfield Covenants and Restrictions (the Covenants) do not allow the Association to approve fence construction applications for lots that abut the lake, lagoons, or golf course in the

Hamlets, except for stated limited circumstances and the Association violated such determination by approving the projects. We affirm.[1]

## FACTS

The Hamlets is a subdivision within Crowfield Plantation. The Covenants were drafted by Westvaco Development Corporation and recorded in 1991. The Covenants created an Architectural Review Board (ARB), and the Association assumed full control of the ARB in 2003.

Article V, Section 5.01, of the Covenants, Architectural Control, provide in part:

> No construction, reconstruction, remodeling, alteration, or addition to any structure, building, fence, wall, driveway or improvement of any nature shall be commenced without obtaining the prior written approval of the [ARB] as to location, plans and specifications.... In addition to the Architectural Guidelines, and not as any limitation thereof, the following restrictions shall apply to the lands subject to these Covenants:
>
> ....
>
> c. Fencing of Lots that abut the lake or the golf course is not authorized except as provided in paragraphs 5.01 d, e, and f. Fences may be erected on other than lake and golf lots....
>
> d. Dog kennel pens may be authorized with prior approval of the ARB as to location, size, and type of fencing. Fencing will usually be ornamental in nature and not exceed 6 feet in height. Kennel location will abut the house when possible and in every case will be as close to the rear of the house as practical; kennels/pens will not be visible from the street.
>
> e. .... A wall or fence at least 4–feet high, with self-locking gates, shall completely enclose the pool or surrounding yard. For Lots that abut the lake or golf course, the pool fencing cannot extend more than 20 feet from the edge of the pool....

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

f. Residential tennis courts may be authorized for construction on a lot with prior approval of the ARB as to location, lighting, and fencing. . . . Fencing should be that customarily used with tennis courts and may exceed 6 feet in height depending upon the locations of the courts and the visibility from the street.

The Matsells live in the Hamlets, and their lot abuts the golf course. In 2005, the Matsells' next-door neighbors built a fence that covers the majority of the backyard and can be seen from the street. On November 30, 2007, the Matsells filed an amended complaint seeking a declaratory judgment ordering the Association to comply with, abide by, and enforce section 5.01 of the Covenants. Further, the Matsells sought an order that the Association's approval of the fence in their neighbors' yard violated the Covenants. The Matsells also sought an injunction requiring the removal of their neighbors' fence, along with other similarly approved fences in the Hamlets.

The Matsells and the Association both filed motions for summary judgment. Following a hearing on the matter, the trial court granted summary judgment to the Matsells. The trial court found:

> The clear language of the Covenant provides that fences on lots that abut the lake, lagoons, or golf course are *not* allowed *except* when enclosing a dog kennel pen (or enclosing a swimming pool or tennis court as further stated in subsections (e) and (f)). When the dog kennel pen exception applies, the fence must be located as close to the rear of the house as is practical, and the fence will not be visible from the street.

The trial court found the Association could not dispute that the lot adjoining the Matsells' lot has a fence that can be seen from the street and covers most of the backyard. The court stated, "Section 5.01(c) through (f) is clear, unambiguous, and explicit. There is no genuine issue of fact as to its construction as it plainly provides that no fences are permitted on lots abutting a lake, lagoon, or golf course within The Hamlets except in limited circumstances." Accordingly, the court found "[a] declaratory judgment is appropriate in this instance as the relief sought is a declaration regarding the proper interpretation of this provision of the Covenants." The court

further found that injunctive relief was "fair, just, and effective." This appeal followed.

## STANDARD OF REVIEW

The purpose of summary judgment is to expedite the disposition of cases not requiring the services of a fact finder. *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001). When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.,* 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

## LAW/ANALYSIS

The Association contends the trial court erred in ruling the Covenants do not allow it to approve fence construction applications for lots abutting a lake, lagoon, or golf course except for stated limited circumstances and the Association violated such determinations by approving the projects. It maintains the ARB has vast authority over all construction projects in the Hamlets and the language in 5.01(c) does not limit that authority. We disagree.[2]

"Restrictive covenants are construed like contracts and may give rise to actions for breach of contract." *Queen's*

---

**2.** The Association filed a letter with this court pursuant to Rule 208(b)(7), SCACR, to bring to our attention the recently decided case of *Buffington v. T.O.E. Enterprises,* 383 S.C. 388, 680 S.E.2d 289 (2009), requiring the court to balance the equities before issuing an injunction once it determines a restrictive covenant has been violated. Rule 208(b)(7) provides, "There shall be a reference either to the page of the brief or to an issue to which the citations pertain, but the letter shall, without argument, state the reasons for the supplemental citations." At no point prior to this letter has the Association asserted the trial court failed to balance the equities before issuing the injunction. Accordingly, the Association cannot assert this issue on appeal.

*Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.,* 368 S.C. 342, 361, 628 S.E.2d 902, 913 (Ct.App.2006). "Summary judgment is improper when there is an issue as to the construction of a written contract and the contract is ambiguous because the intent of the parties cannot be gathered from the four corners of the instrument." *Wallace v. Day,* 390 S.C. 69, 74, 700 S.E.2d 446, 449 (Ct.App.2010) (internal quotation marks omitted). "The court is without authority to consider parties' secret intentions, and therefore words cannot be read into a contract to impart an intent unexpressed when the contract was executed." *Pee Dee Stores, Inc. v. Doyle,* 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct.App.2009). "Construction of an ambiguous contract is a question of fact to be decided by the trier of fact." *Id.*

 "Words of a restrictive covenant will be given the common, ordinary meaning attributed to them at the time of their execution." *Taylor v. Lindsey,* 332 S.C. 1, 4, 498 S.E.2d 862, 863 (1998). "Restrictive covenants are contractual in nature, so that the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." *Id.* at 4, 498 S.E.2d at 863–64 (internal quotation marks omitted). When "the language imposing restrictions upon the use of property is unambiguous, the restrictions will be enforced according to their obvious meaning." *Shipyard Prop. Owners' Ass'n v. Mangiaracina,* 307 S.C. 299, 308, 414 S.E.2d 795, 801 (Ct.App. 1992). "A restriction on the use of property must be created in express terms or by plain and unmistakable implication, and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of property." *Taylor,* 332 S.C. at 5, 498 S.E.2d at 864.

 An action seeking an injunction to enforce restrictive covenants sounds in equity. *Santoro v. Schulthess,* 384 S.C. 250, 261, 681 S.E.2d 897, 902 (Ct.App.2009). "[U]pon a finding that a restrictive covenant has been violated, a court may not enforce the restrictive covenant as a matter of law. Rather, the court must consider equitable doctrines asserted by a party when deciding whether to enforce the covenant." *Buffington,* 383 S.C. at 394, 680 S.E.2d at 292.

The Covenants state that lots on a lake, lagoon, or golf course can only have fences that are either a dog kennel, around a pool, or around a tennis court. The first sentence of the Architectural Control Guidelines states that no construction of a fence can begin without approval of the ARB. These two sentences do not conflict. Nothing in this language supports the Association's assertion that the ARB can approve fences for lots on the lake and golf course that do not fall within the exceptions. The Association does have discretion in fences around other lots in the neighborhood, but the Covenants explicitly state for lots on the lake or golf course the only fences allowed are dog kennels or around a pool or tennis court. Accordingly, the Covenants do not create an ambiguity and the trial court properly granted summary judgment to the Matsells. Therefore, the trial court's decision is

AFFIRMED.

WILLIAMS and PIEPER, JJ., concur.