389 S.C. 485 (2010)
698 S.E.2d 817
Timothy R. WALLACE, Donna P. Wallace, William Andrew Wallace, Kimberly A. Wallace, David Jonathan Wallace and Christine Ponder Wallace, Respondents,
v.
Lynn Wellborn DAY, Appellant.
No. 4700.
Court of Appeals of South Carolina.
Heard March 2, 2010.
Decided June 16, 2010.
Rehearing Denied September 29, 2010.
*487 Amanda A. Bailey and Henrietta U. Golding, of Myrtle Beach, for Appellant.
George Hunter McMaster, of Columbia, and Brooks R. Fudenberg, of Mount Pleasant, for Respondents.
PER CURIAM:
Respondents, Timothy Wallace and several members of his family (the Wallaces), filed this action against Appellant Lynn Day (Day), seeking damages for breach of a contract to purchase a condominium in the Camelot by the Sea Resort in Myrtle Beach. Day filed counterclaims for breach of contract, intentional interference with contractual relations, and civil conspiracy. The master-in-equity granted the Wallaces' summary judgment motion, and Day appeals the master's order. We reverse in part and vacate in part the master's order and remand for a full trial on the merits.

FACTS/PROCEDURAL HISTORY
On February 19, 2005, the Wallaces entered into a contract to purchase Day's condominium in the Camelot by the Sea Resort in Myrtle Beach.[1] The contract required a closing date of March 18, 2005; however, the parties executed an addendum to the contract to extend the closing date to April 6, *488 2005. The parties also executed a separate addendum stating that the Wallaces were "exercising a 1031 tax free purchase."[2]
When the April 6th closing date arrived, the Wallaces were unable to close the transaction due to problems with the loan package. On April 7, Day presented an earnest money release to the Wallaces' agent, proposing to return the Wallaces' earnest money. On April 8, the Wallaces were ready to close, but Day signed a contract to sell the condominium to Steve and Sandra Purwell (the Purwells). On April 18, Day sent a letter to her agent authorizing the return of the Wallaces' earnest money and also sent a copy of the letter to the Wallaces' agent. On April 21, the Wallaces filed a Notice of Lis Pendens as to the condominium. On May 12, Day sent a letter to her agent withdrawing the offer to refund the Wallaces' earnest money and also sent a copy of the letter to the Wallaces' agent. On that same day, the Wallaces filed an Amended Notice of Lis Pendens. Subsequently, the Wallaces filed a Second Amended Notice of Lis Pendens on June 2, a Third Amended Notice of Lis Pendens on June 22, and a complaint for breach of contract against Day on June 24. The Wallaces' complaint sought damages, or, in the alternative, specific performance.
Day filed a counterclaim for breach of contract, intentional interference with contractual relations, and civil conspiracy. Day sought summary judgment on her breach of contract claim; however, the circuit court denied the motion. While Day's motion for reconsideration was still pending, the parties agreed to a referral of the case to the master-in-equity, and the Wallaces filed a summary judgment motion. Subsequently, the parties entered into a stipulation of facts. After the circuit court denied Day's motion for reconsideration, the master granted the Wallaces' summary judgment motion and dismissed Day's breach of contract counterclaim. Although the Wallaces' summary judgment motion was originally limited to their cause of action for specific performance, they later elected to proceed on their cause of action for breach of *489 contract. In his final order, the master awarded the Wallaces $65,000 for the difference between the condominium's market price and contract price at the time of Day's alleged breach and $15,500 for lost profits, for a total damages award of $80,500. The master also awarded the Wallaces $33,749.10 for attorney's fees and costs. This appeal followed.

STANDARD OF REVIEW
On appeal from the grant of a summary judgment motion, this Court applies the same standard as that required for the circuit court under Rule 56(c), SCRCP. Brockbank v. Best Capital Corp., 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000). "`Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Adamson v. Richland County Sch. Dist. One, 332 S.C. 121, 124, 503 S.E.2d 752, 753 (Ct.App.1998) (quoting Tupper v. Dorchester County, 326 S.C. 318, 325, 487 S.E.2d 187, 191 (1997)).
"Summary judgment should be granted when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ." Pee Dee Stores, Inc. v. Doyle, 381 S.C. 234, 240, 672 S.E.2d 799, 802 (Ct.App.2009). "However, summary judgment is not appropriate when further inquiry into the facts of the case is desirable to clarify the application of law." Id. "Summary judgment is a drastic remedy, which should be cautiously invoked so that no person will be improperly deprived of a trial of the disputed factual issues." Doe ex rel. Doe v. Batson, 345 S.C. 316, 321-22, 548 S.E.2d 854, 857 (2001) (citing Baughman v. American Tel. & Tel. Co., 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991)).
"In determining whether any triable issues of fact exist, the evidence and all inferences must be viewed in the light most favorable to the nonmoving party." Pee Dee, 381 S.C. at 240, 672 S.E.2d at 802. "Thus, the appellate court reviews all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party." Id. Further, "`[s]ummary judgment should not be granted even when there is no dispute as to evidentiary facts if there is dispute as to the conclusion to be drawn from those facts.'" Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P., 385 *490 S.C. 452, 456, 684 S.E.2d 756, 758 (2009) (quoting Brockbank v. Best Capital Corp., 341 S.C. at 378, 534 S.E.2d at 692 (2000)).
"Summary judgment is improper when there is an issue as to the construction of a written contract and the contract is ambiguous because the intent of the parties cannot be gathered from the four corners of the instrument." Pee Dee, 381 S.C. at 241, 672 S.E.2d at 802. "The court is without authority to consider parties' secret intentions, and therefore words cannot be read into a contract to impart an intent unexpressed when the contract was executed." Id. "Construction of an ambiguous contract is a question of fact to be decided by the trier of fact." Id. (citing Soil Remediation Co. v. Nu-Way Envtl., Inc., 325 S.C. 231, 234, 482 S.E.2d 554, 555 (1997)).

LAW/ANALYSIS

I. The Wallaces' Breach of Contract Claim

Day asserts that the master erred in granting summary judgment to the Wallaces on their breach of contract claim because the Wallaces admitted they were in default for failing to close on April 6, 2005 and because she was not required to provide the Wallaces with either a notice of default or five days to cure their default. We agree that the master erred in granting summary judgment, but not for the reason asserted by Day. Rather, we find that summary judgment is inappropriate because there is an ambiguity in the contract's default provision.
Initially, we note that counsel stated during oral arguments the parties were not arguing the contract's provisions were ambiguous. However, their opposing viewpoints on the meaning of the contract's default provisions requires the Court to consider whether an ambiguity in the contract precluded the master from granting summary judgment. See Greer v. McFadden, 295 S.C. 14, 17-18, 366 S.E.2d 263, 265 (Ct.App. 1988) (citing Bartles v. Livingston, 282 S.C. 448, 464, 319 S.E.2d 707, 716-17 (Ct.App.1984)) ("When this Court construes an exception, it will make its construction as liberal as the language will allow, in order to decide the question involved, unless it is satisfied that the statement has misled the *491 respondent to his prejudice."). Day framed the first issue in her appellate brief as follows: "Whether the trial court erred in granting summary judgment in favor of the Wallaces' breach of contract claim against Day when the Wallaces admit they were in default for failing to close on April 6, 2005?" This issue necessarily involves Day's interpretation of the contract in a manner that would relieve her of any further obligations to the Wallaces. The Wallaces dispute this interpretation, and, consequently, this Court is called upon to decide whether the provisions in question are reasonably susceptible to more than one interpretation and thus ambiguous. Under these circumstances, we are not satisfied that Day's statement of the first issue in her brief could have misled the Wallaces to their prejudice. See id. Therefore, in the spirit of judicial economy advanced by Greer, we address the question of the contract's ambiguity and its effect on the master's summary judgment ruling.
When interpreting a contract, a court must ascertain and give effect to the intention of the parties. Chan v. Thompson, 302 S.C. 285, 289, 395 S.E.2d 731, 734 (Ct.App. 1990). To determine the intention of the parties, the court "must first look at the language of the contract...." C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Comm'n, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988). When the language of a contract is clear and unambiguous, the determination of the parties' intent is a question of law for the court. Hawkins v. Greenwood Dev. Corp., 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997). Whether an ambiguity exists in the language of a contract is also a question of law. S.C. Dep't of Natural Res. v. Town of McClellanville, 345 S.C. 617, 623, 550 S.E.2d 299, 302-03 (2001).
"A contract is ambiguous when the terms of the contract are reasonably susceptible of more than one interpretation." McClellanville, 345 S.C. at 623, 550 S.E.2d at 302. "The uncertainty in interpretation can arise from the words of the instrument, or in the application of the words to the object they describe." Pee Dee, 381 S.C. at 242, 672 S.E.2d at 803. "Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties." McClellanville, 345 S.C. at 623, 550 S.E.2d at 303. "The determination *492 of the parties' intent is then a question of fact." Id. (emphasis added).
Here, paragraph 16 of the contract addresses the options available in the event of a party's default:
If Buyer or Seller fails to perform any covenant of this Agreement, the other may elect to seek any remedy provided by law, including but not limited to attorney fees and actual costs incurred (as defined in paragraph 17), or terminate this Agreement with a five day written notice.

(emphasis added).
The Wallaces assert that this paragraph provides a party with two options when the other party is in default: (1) elect to seek any remedy provided by law; or (2) terminate the agreement with a five day written notice. They argue that Day opted for the second alternativeterminationand therefore she was required to provide them with a five day written notice. Day, on the other hand, maintains that she opted for the first alternativeelecting to seek any remedy provided by law. She asserts that this alternative allowed her to treat the contract as abandoned by the Wallaces when they failed to close on the designated date and to refrain from any further performance without having to provide notice to the Wallaces. She argues that because the contract contains multiple provisions emphasizing that time is of the essence, the contract expired pursuant to its own terms when the Wallaces failed to close by the contract's deadline. She insists that under these circumstances, she had no further obligation to the Wallaces.
We find the terms of the contract's default provision to be reasonably susceptible to more than one interpretation. Therefore, the determination of the parties' intent at the time they executed the contract is a question of fact that should not have been decided on summary judgment. See Pee Dee, 381 S.C. at 241, 672 S.E.2d at 802 (holding that summary judgment is improper when there is an issue as to the construction of a written contract and the contract is ambiguous); McClellanville, 345 S.C. at 623, 550 S.E.2d at 302-3 (holding that a contract is ambiguous when the terms of the contract are reasonably susceptible to more than one interpretation and that once the court decides that the language is ambiguous, *493 the determination of the parties' intent is then a question of fact). For this reason, we conclude that the master erred in granting summary judgment to the Wallaces on their breach of contract claim and in dismissing Day's breach of contract counterclaim.

II. Dismissal of Day's Remaining Counterclaims

Day claims the master erred in finding that Judge Breeden's May 5, 2006 order reflected her voluntary withdrawal of her counterclaims for intentional interference with contractual relations and civil conspiracy.[3] She argues that Judge Breeden's order reflected her withdrawal of her motion for summary judgment with respect to those counterclaims.[4] We agree.
Judge Breeden's May 5, 2006 order is a form order that begins with the following boilerplate: "IT IS ORDERED that the MOTION BE STRUCK FROM THE ACTIVE motion calendar for the following reason(s)[.]" The following language was added in handwriting:
Def Motion for Summary Judgment: Under Advisement Both Attorneys to submit a proposed order within 10 days. Defendant withdraws the intentional Interference with Contractual Relations and Civil Conspiracy. Def Motion to Refer: Plaintiff consents to the referral
This form order was obviously created for striking motions from the active roster, not the underlying claims. Viewing the May 5, 2006 order as a whole, we believe it indicates that Day was merely withdrawing her summary judgment motion with respect to her counterclaims for intentional interference with contractual relations and civil conspiracy and not the counterclaims themselves. This is confirmed by the statement of counsel made during the hearing on Day's summary judgment motion: "We have also moved for Summary Judgment on our last two cause [sic] of action: Intentional Interference with *494 Contractual Relations and Civil Conspiracy. And Your Honor, at this particular time . . . I would withdraw that motion as to those two causes of action."
Based on the foregoing, it is appropriate to vacate the finding that Day withdrew her counterclaims for intentional interference with contractual relations and civil conspiracy and to remand those counterclaims for a trial on the merits.

CONCLUSION
Based on the foregoing, we reverse the master's grant of the Wallaces' summary judgment motion as well as his dismissal of Day's breach of contract counterclaim. Additionally, we vacate the master's finding that Day voluntarily withdrew her counterclaims for intentional interference with contractual relations and civil conspiracy. All of the parties' respective causes of action are remanded for a full trial on the merits.
Accordingly, the master's order is
REVERSED IN PART, VACATED IN PART, and REMANDED.
HUFF, PIEPER, and GEATHERS, JJ., concur.
NOTES
[1] At this time, the property was titled in the name of Day's late husband, but Day had authority to sign the contract.
[2] See 26 U.S.C. § 1031(a)(1) (Supp.2009) ("No gain or loss shall be recognized on the exchange of property held for productive use in a trade or business or for investment if such property is exchanged solely for property of like kind [that] is to be held either for productive use in a trade or business or for investment.").
[3] The master's order and Day's brief both refer to Judge Breeden's order as being filed on May 12, 2006, but the date stamp on the order indicates that it was filed on May 11, 2006. To avoid confusion, we will refer to the order according to the date that Judge Breeden signed it, May 5, 2006.
[4] At oral arguments, counsel for the Wallaces conceded this point.