730 S.E.2d 869

**GREENEAGLE, INC., Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL, Respondent.**

**No. 4975.**

Court of Appeals of South Carolina.

Heard April 26, 2012.
Decided May 16, 2012.
Rehearing Denied July 23, 2012.

W. Thomas Lavender, Jr., Leon C. Harmon, and Joan W. Hartley, all of Columbia, for appellant.

Carlisle Roberts, Jr., Jacquelyn S. Dickman, and Etta R. Williams, all of Columbia, for respondent.

PIEPER, J.

Appellant Greeneagle, Inc. (Greeneagle) appeals from an order of the Administrative Law Court (ALC) upholding Respondent South Carolina Department of Health and Environmental Control's (DHEC) decision to deny Greeneagle's landfill permit application. On appeal, Greeneagle argues the ALC erred as a matter of law by finding DHEC properly denied its permit application because the proposed landfill was inconsistent with the 2007 York County Solid Waste Management Plan. We affirm.

## FACTS

In 2005, Marvin Taylor and Hall Rogers, who later incorporated Greeneagle, became interested in locating a long-term construction, demolition, and land-clearing debris (C & D) landfill (the proposed landfill) in York County. After identifying a site for the proposed landfill, Greeneagle submitted a demonstration of need (DON) request and a request for a

consistency review to DHEC. On April 25, 2006, DHEC issued a DON approval letter, wherein DHEC evaluated the information and determined that pursuant to the DON regulations, there was a need for the proposed landfill. The following month, DHEC issued a preliminary consistency determination for the proposed landfill based upon its review of the local plan of record, the 1994 Catawba Region Solid Waste Management Plan (1994 Plan). DHEC's preliminary finding was that the proposed landfill was consistent with the 1994 Plan and the South Carolina Solid Waste Management Plan. However, the preliminary consistency determination indicated that DHEC could not make a final consistency determination until the potential permit was ready for issuance. The preliminary consistency determination also indicated that York County was in the process of preparing a new solid waste management plan and if York County revised or replaced the 1994 Plan during the permitting process, DHEC would review the newest plan of record to make the final consistency determination.

Greeneagle began to undertake the design, engineering, and field work necessary to support an application package for the proposed landfill. During this time, York County adopted by ordinance a new solid waste management plan on February 28, 2007 (2007 Plan). Approximately one year after York County adopted the 2007 Plan, Greeneagle submitted its completed permit application to DHEC. On May 19, 2008, DHEC notified Greeneagle by letter that DHEC could not issue a permit for the proposed landfill because it had determined that the proposed landfill was not consistent with the 2007 Plan. In an internal memorandum, DHEC indicated that it had reviewed information relevant to the adoption of the 2007 Plan and it was satisfied that York County had properly adopted the 2007 Plan. DHEC also indicated in the memorandum that it had determined the proposed landfill was inconsistent with the 2007 Plan because the 2007 Plan provided that the county's current and projected capacity needs for C & D waste could be adequately addressed with existing facilities and the potential for expansion of existing facilities.

Two months after DHEC denied Greeneagle's permit application, Greeneagle filed a request for a contested case hearing in the ALC. After a hearing, the ALC issued an order finding

no evidence existed to support Greeneagle's allegations that DHEC unlawfully denied its permit application. The ALC also found that DHEC thoroughly reviewed the application, made appropriate DON and consistency determinations pursuant to the requirements of the South Carolina Solid Waste Policy and Management Act (SWPMA) and the applicable regulations, and properly determined that Greeneagle's permit application was not consistent with the 2007 Plan. This appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act (APA) establishes the standard of review for appeals from the ALC. *Murphy v. S.C. Dep't of Health & Envtl. Control*, 396 S.C. 633, 723 S.E.2d 191, 194 (2012). The APA provides this court may reverse or modify the ALC's decision only if the substantive rights of a party have been prejudiced due to: constitutional or statutory violations; an agency exceeding its authority; unlawful procedure; an error of law; a clearly erroneous view of evidence in the record; or an abuse of discretion. S.C.Code Ann. § 1–23–610(B) (Supp.2011). "As to factual issues, judicial review of administrative agency orders is limited to a determination [of] whether the order is supported by substantial evidence." *Murphy*, 396 S.C. at 639, 723 S.E.2d at 194 (internal quotation marks omitted). "Substantial evidence" sufficient to support a finding of the ALC is "evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached." *Risher v. S.C. Dep't of Health & Envtl. Control*, 393 S.C. 198, 210, 712 S.E.2d 428, 434 (2011) (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (internal quotation marks omitted).

## ANALYSIS

Greeneagle argues the ALC erred by upholding DHEC's decision because (1) DHEC improperly merged or comingled the DON and consistency requirements in deciding to deny its permit application, and (2) DHEC's finding that the proposed

landfill was inconsistent with the 2007 Plan constituted an improper delegation of DHEC's permitting authority.[1] We disagree.

■ The SWPMA requires a person to obtain a permit from DHEC before operating a solid waste management facility. S.C.Code Ann. § 44–96–290(A) (2002). For purposes of the SWPMA, a C & D landfill is considered a "solid waste management facility." S.C.Code Ann. § 44–96–40(49) (2002). Under the SWPMA, DHEC has the sole authority to issue, deny, revoke, or modify permits. S.C.Code Ann. § 44–96–260(2) (2002); *see also Se. Res. Recovery, Inc. v. S.C. Dep't of Health & Envtl. Control,* 358 S.C. 402, 408, 595 S.E.2d 468, 471 (2004) (holding DHEC is the final arbiter on permitting). Therefore, DHEC is charged with ensuring solid waste management facilities meet the requirements for permitting. *Se. Res. Recovery, Inc.,* 358 S.C. at 408, 595 S.E.2d at 471.

The permitting section of the SWPMA provides, "No permit to construct a new solid waste management facility or to expand an existing solid waste management facility may be issued until a demonstration of need is approved by [DHEC]." S.C.Code Ann. § 44–96–290(E) (2002). This section also prohibits DHEC from issuing a permit "unless the proposed facility or expansion is consistent with . . . the local or regional solid waste management plan and the state solid waste management plan. . . ." S.C.Code Ann. § 44–96–290(F) (2002). The planning section of the SWPMA sets forth requirements that the counties must adhere to when developing a local solid waste management plan. S.C.Code Ann. § 44–96–80 (2002). In particular, the planning section of the SWPMA requires each local plan to include "an analysis of the existing and new solid waste facilities which will be needed to manage the solid waste generated within that county or region during the projected twenty-year period." S.C.Code Ann. § 44–96–80(A)(3) (2002).

■■ The determination of need and of consistency are two separate and distinct factors in the permitting process, and the SWPMA does not expressly require DHEC to follow

---

1. Greeneagle does not contend that the decision of the ALC was arbitrary or capricious.

any specific procedures in making decisions regarding need and consistency. *Se. Res. Recovery, Inc.,* 358 S.C. at 408, 595 S.E.2d at 471. Nor does the SWPMA expressly define the term "need." The SWPMA does, however, require DHEC to promulgate regulations to carry out its responsibility of making decisions regarding the DON requirement. S.C.Code Ann. § 44–96–290(E) (2002). These regulations require DHEC to look to the number of surrounding disposal facilities when determining whether there is a need for a new solid waste facility. S.C.Code Ann. Regs. 61–107.17(D)(3) (Supp. 2007).[2] "Where there are at least two commercial disposal facilities under separate ownership within [a ten-mile radius][3] that meet the disposal needs for the area, e.g., that accept special waste and, if applicable, are capable of handling additional tonnage, no new disposal capacity will be allowed." S.C.Code Ann. Regs. 61–107.17(D)(3)(a) (Supp.2007).

Substantial evidence supports a finding that DHEC's DON determination was separate and distinct from its consistency determination. In the April 25, 2006 letter, in which DHEC notified Greeneagle that it had determined there was a need for the proposed landfill in the corresponding planning area, DHEC specifically distinguished between the DON requirement and the consistency requirement as separate steps in the review process. The letter further provided that DHEC had decided to approve the DON based upon the applicable regulations, indicating there was a *geographical* need for a C & D landfill. *See* S.C.Code Ann. Regs. 61–107.17(D)(3) (Supp.2007) (requiring DHEC to make a DON determination prior to making a consistency determination based upon the number of existing C & D landfills within a ten-mile radius of the proposed landfill). At the hearing, Arthur Braswell, the former director of DHEC's Solid Waste Management Division, testified that DHEC did not rely on anything in the local plan in its decision to approve the DON. Braswell further testified that had Greeneagle asked for a DON determination on the same day that York County adopted the 2007 Plan, DHEC's

---

2. This regulation was in effect at the time DHEC made all of its determinations regarding the proposed landfill. This regulation was amended effective June 26, 2009.

3. The 2009 amendment changed this to a twenty-mile radius.

decision to approve the DON would not have changed. This evidence indicates the "need" assessed by DHEC in making its DON determination was a geographical need, solely dependent upon the number of existing landfills within the statutorily defined area of the proposed landfill.

On the other hand, DHEC notified Greeneagle in two subsequent letters that DHEC made preliminary and final consistency determinations based upon its review of the current York County solid waste management plan. Kent Coleman, who is the director of DHEC's Division of Mining and Solid Waste Management, testified at the hearing that DHEC ultimately concluded the proposed landfill was not consistent with the planning effort of York County because York County had adequate landfill capacity to meet its *disposal* needs. This evidence indicates that the "need" assessed by DHEC in making its consistency determination was a disposal need, which depended upon whether the existing landfills had the capacity to adequately dispose of the current and projected amount of C & D waste produced in York County. Because DHEC independently assessed the geographical need for the proposed landfill based upon the number of existing facilities and the disposal need based upon the capacity of those existing facilities, we find DHEC did not merge or comingle its determination of need with its consistency determination.

■ To support its argument that DHEC's consistency determination constituted an improper delegation of DHEC's permitting authority, Greeneagle relies on the supreme court's opinion in *Southeast Resource Recovery, Inc. v. South Carolina Department of Health & Environmental Control,* 358 S.C. 402, 595 S.E.2d 468 (2004) (*SRRI* ). In *SRRI*, the supreme court held DHEC's practice of allowing the counties to determine whether a proposed solid waste management facility was consistent with the local solid waste management plan constituted an impermissible delegation of authority. *Id.* at 408, 595 S.E.2d at 471. More recently, this court determined in *York County v. South Carolina Department of Health & Environmental Control,* that there was no meaningful distinction between the counties' consistency determinations in *SRRI* and an emergency county ordinance that declared all proposed landfills not yet permitted by DHEC were inconsistent with the local solid waste management plan. 397

S.C. 217, 723 S.E.2d 255, 256–57 (Ct.App.2012). This court found that in both situations, the county was making a consistency determination regarding a proposed landfill, which was a power that only DHEC could exercise. *Id.*

The present case is distinguishable from both *SRRI* and *York County*. As required by the SWPMA, the 2007 Plan provided an analysis of York County's current and future capacity to manage solid waste. *See* S.C.Code Ann. § 44–96–80(A)(3) (2002) (providing each local solid waste management plan must include "an analysis of the existing and new solid waste facilities which will be needed to manage the solid waste generated within that county or region during the projected twenty-year period"). Based upon this analysis, the 2007 Plan indicated that York County could address its current and projected capacity needs for C & D waste with existing facilities and the potential for expansion of existing facilities. Unlike the emergency ordinance in *York County* and the letters of consistency in *SRRI*, the 2007 Plan did not directly make a consistency determination by expressly declaring the proposed landfill inconsistent with the local solid waste management plan.

Even if we were to assume that the 2007 Plan was an effort by York County to usurp DHEC's authority by indirectly controlling DHEC's permitting decision, substantial evidence exists that DHEC, not the county, determined the proposed landfill was inconsistent with the local solid waste management plan. At the hearing, Jana White, who is the manager of DHEC's Solid Waste Planning and Grants Section, and Kent Coleman both testified that DHEC did not simply rely upon the capacity determination provided in the 2007 Plan. According to White and Coleman, DHEC conducted its own analysis and independently verified that York County had accurately identified the amount of waste it currently generated; made a logical projection of how much waste the county would generate in the future based on population and tons per person; and that the existing facilities had the capacity to adequately handle the current and expectant amount of waste. White and Coleman both testified that the need analysis in the 2007 Plan did not undermine DHEC's permitting authority and it played no role in DHEC's consistency determination. Based on this evidence, we find DHEC did not improperly

delegate its permitting authority by allowing York County to determine whether the proposed landfill was consistent with the local plan.[4]

## CONCLUSION

For the foregoing reasons, the decision of the ALC is hereby

**AFFIRMED.**

KONDUROS and GEATHERS, JJ., concur.

---

4. In light of our disposition herein, we decline to address Greeneagle's remaining arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not address all issues on appeal when the disposition of one issue is dispositive).