798 S.E.2d 445

**Dan ABEL and Mary Abel, Appellants,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and Pawleys Island Community Church, Respondents.**

Appellate Case No. 2015-000602
Opinion No. 5474

Court of Appeals of South Carolina.

Heard November 9, 2016
Filed March 15, 2017
Rehearing Denied May 2, 2017

Amy Elizabeth Armstrong, and Jessie Allison White, both of the South Carolina Environmental Law Project, of Pawleys Island, for Appellants.

Daniel W. Stacy, Jr., of Oxner & Stacy, PA, of Pawleys Island, and Deborah Harrison Sheffield, of Columbia, for Respondent Pawleys Island Community Church; Nathan Michael Haber, of Charleston, for Respondent South Carolina Department of Health and Environmental Control.

LOCKEMY, C.J.:

In this appeal from the Administrative Law Court (ALC), Dan and Mary Abel (the Abels) argue the ALC erred in refusing to enforce a previous consent order requiring that wetlands on neighboring property be maintained. We reverse and remand.

## FACTS

In 2000, Pawleys Island Baptist Church (the Church) filed an application for a coastal zone consistency certification to permit it to fill in wetlands during the construction of a new

sanctuary. The South Carolina Department of Health and Environmental Control (DHEC) issued the certification. The Abels, along with David Mims, challenged DHEC's decision to the ALC. The parties subsequently agreed to a settlement agreement that was memorialized in a consent order issued on January 8, 2001. In part, the consent order stated, "The Church agrees that the wetland preserved by this Consent Order shall remain in its natural state."

In 2012, the Church applied for a new coastal zone certification to permit it to fill in additional wetlands. During the pendency of that application, the Church requested the ALC modify the consent order. The proposed modified consent order, signed by the Church and Mims, stated, "a new permit/application ('The Permit') is being made by the Church to undertake improvements to the Church and said Permit cannot be reviewed by [DHEC] without applying the heightened restrictions required under the Order until this Modified Consent Order ... is approved by the Court." The Abels opposed the modified consent order, and the ALC dismissed the Church's request because DHEC had not issued its final decision to issue the permit.

Eventually, DHEC approved the certification. Thereafter, the Abels filed a request for a contested case hearing with the ALC, arguing the 2001 consent order prohibited DHEC from issuing the certification. The Abels also filed a motion to enforce the consent order and a motion to consolidate the 2014 case with the 2001 case. The ALC found the 2001 consent order was a valid and enforceable contract. The ALC then found the contract did not apply to the 2014 case, dismissed the Abels' challenge, and denied their motion to enforce the settlement agreement. This appeal followed.

**STANDARD OF REVIEW**

■ "The Administrative Procedures Act (APA) establishes the standard of review for appeals from the ALC." *Greeneagle, Inc. v. S.C. Dep't of Health & Envtl. Control*, 399 S.C. 91, 95, 730 S.E.2d 869, 871 (Ct. App. 2012). Under the APA, this court may "reverse or modify the decision [of the ALC] if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is ... (d) affected by other error of law." S.C. Code Ann. § 1-23-610(B) (2005).

438

■■■■ "In South Carolina jurisprudence, settlement agreements are viewed as contracts." *Nichols Holding, LLC v. Divine Capital Grp.*, 416 S.C. 327, 335, 785 S.E.2d 613, 615 (Ct. App. 2016) (quoting *Pee Dee Stores, Inc. v. Doyle*, 381 S.C. 234, 241, 672 S.E.2d 799, 802 (Ct. App. 2009)). "The court's duty is to enforce the contract made by the parties regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Id.* (quoting *Ellis v. Taylor*, 316 S.C. 245, 248, 449 S.E.2d 487, 488 (1994)). "When the language of a contract is clear and unambiguous, the determination of the parties' intent is a question of law for the court." *Id.* at 336, 785 S.E.2d at 615 (quoting *Wallace v. Day*, 390 S.C. 69, 74, 700 S.E.2d 446, 449 (Ct. App. 2010)).

## ANALYSIS

■■■■ The ALC initially noted it would enforce the 2001 consent order if it were valid and enforceable; however, under the ALC's later interpretation, the 2001 consent order only remained in effect during the pendency of that project.

The 2001 consent order contains the following provisions:

1. The designs for the storm water pond and other improvements at the site shall be amended so that approximately one-half (50%) of the wetland area on the site shall be preserved. The storm water pond shall be altered to be located and configured as depicted in the drawing attached hereto as Exhibit A. The Church shall also amend its plans for the proposed structure shown on Exhibit A as "PROPOSED FUTURE BUILDING PHASE II" so that no portion of this structure will encroach upon the area of the wetland.

2. The Church agrees that it will instruct its engineers, architects, contractors and others working on the Church improvement project and storm water management project, to continue to explore additional design changes, where feasible from a time and cost perspective, which will allow possible expansion of the wetland area to be preserved.

3. The church agrees that the wetland preserved by this Consent Order shall remain in its natural state.

4. In constructing the storm water system and church improvements, the Church shall instruct its engineers, architects, contractors and others working on its behalf to employ all available Best Management Practices to prevent harm to the wetland beyond that authorized by this agreement and by the permit and certification as hereby amended. In the event such additional harm to the wetland occurs despite best efforts, the church will restore or mitigate any such harm.

5. Within the area designated on Exhibit A as the "30' NOISE/VISUAL BUFFER," the Church shall maintain a vegetated buffer of native, evergreen shrubbery and trees, with a density of at least one evergreen tree and one shrub every ten (10) feet; the trees and shrubs will be leyland cypress and wax myrtles and similar species, and at planting will be at least six (6) feet in height with fifty percent (50%) of the trees at least ten (10) feet in height; provided however, that the portions of the vegetated buffer in wetland areas or in wooded areas not affected by development on the property, will remain in their natural state.

6. The existing basketball and volleyball fields will be removed and will not be re-located any closer to the rear property line of the church property than the front of the new sanctuary.

7. All lighting on the church property will be placed so that it is shielded or directed away from the properties adjacent to the "30' NOISE/VISUAL BUFFER," shown on Exhibit A.

8. Upon execution of this Consent Order, the Church may immediately begin construction of the new sanctuary and other improvements not inconsistent with this agreement and order.

9. The Church and the Petitioners will cooperate in the execution of any documents needed to secure any required permit amendments to carry out the provisions of this agreement and order.

In its order dismissing the Abels' challenge, the ALC held, "In the context of the entire agreement, I find the intention of the parties in executing the Consent Order is clear and unambiguous, and the Consent Order's applicability is limited to the

2001 construction project." The ALC acknowledged that clause 3, requiring the Church to preserve the protected wetlands, is ambiguous as to time, but found the agreement as a whole only applied to the 2001 project. The ALC based its analysis in large part upon the preamble to the consent order. It states,

> This proceeding arises out of the application of the [Church] for a state storm water permit for the construction of a new sanctuary and other improvements of its property on US Highway 17 in the Pawleys Island area of Georgetown County. In a related application, the church also requested a wetland fill permit from the US Army Corps of Engineers which required a coastal zone consistency certification by the South Carolina Department of Health and Environmental Control, Office of Ocean and Coastal Resource Management (DHEC/OCRM).

The ALC found "[t]his language indicates the Consent Order was executed to address two *specific applications* (the 2000 Permit and CZC) related to a *specific construction project* to be undertaken by the Church in or around 2001." (emphasis added). The ALC also noted clause 1 of the agreement contains a restraint on the development of the wetlands, within the context of the 2001 construction project, because it specifically modifies those plans. With regard to the other clauses, the ALC indicated those clauses also indicated specific restrictions associated with the 2001 project. Accordingly, the ALC found the parties intended the settlement agreement to restrict the Church's ability to modify the wetlands only until the end of the 2001 construction project, not to apply to future projects.

The Abels assert the ALC erred by adding a temporal aspect to its interpretation of clause 3 of the consent order. The Abels agree with the ALC that the consent order is clear and unambiguous, but they disagree that the order was applicable only to the 2001 construction project. We agree.

 "Contracts should be liberally construed so as to give them effect and carry out the intention of the parties." *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 497, 649 S.E.2d 494, 497 (Ct. App. 2007) (quoting *Mishoe v. Gen. Motors Acceptance Corp.*, 234 S.C. 182, 188,

107 S.E.2d 43, 47 (1958)). Courts "are without authority to alter a contract by construction or to make new contracts for the parties." *C.A.N. Enters. v. S.C. Health & Human Servs. Finance Comm'n*, 296 S.C. 373, 378, 373 S.E.2d 584, 587 (1988). "To discover the intention of a contract, the court must first look to its language—if the language is perfectly plain and capable of legal construction, it alone determines the document's force and effect." *Ecclesiastes Prod. Ministries*, 374 S.C. at 498, 649 S.E.2d at 501. "The parties' intention must be gathered from the contents of the entire agreement and not from any particular clause thereof." *Id.* at 498, 649 S.E.2d at 502. However, "[d]ocuments will be interpreted so as to give effect to all of their provisions, if practical." *Id.*

We find the ALC improperly rewrote the unambiguous language in the consent order to apply a temporal aspect to the third clause of the contract. The consent order stated, "The church agrees that the wetland preserved by this Consent Order shall remain in its natural state." The parties' use of the words "shall remain," without a specific temporal limitation, evidences an intent that the Church will not seek to modify the remaining wetlands in future building plans. The clause's plain language protects the wetlands going forward; the question then becomes whether the remaining language of the contract limits the temporal scope of that clause.

We find the explanatory opening paragraph to the consent order does not create a temporal restriction on the nine clauses contained therein. The consent order explains the background for the negotiated settlement. The order identifies the controversy and the parties and states the parties have "resolved their differences" in the case regarding the 2000 permit. However, this introduction does nothing to limit the clauses contained within the settlement agreement to the controversy being settled. Such a precedent would allow the Church to settle the 2001 case and immediately file for another permit with a different construction plan. Essentially, the settlement would be rendered meaningless. Accordingly, the ALC erred in imposing a temporal restriction on a clause which contains no such limitation.

Furthermore, other clauses also contain restrictions that survive the 2000 construction project by their plain language.

Clause 5, for example, requires the Church "maintain a vegetated buffer of native, evergreen shrubbery and trees...." It strains the imagination to construe this clause only to apply to the construction project. Under such an interpretation, the Church need have only maintained the plants until construction was finished and then cut them down if it liked. Finally, clauses 6 and 7 require the Church to reposition volleyball courts and ensure lights are directed away from neighboring properties. These clauses also indicate a future restriction on the Church's ability to modify the negotiated aspects of the 2001 plans in future construction projects.[1]

Accordingly, the ALC erred by interpreting the Consent Order to include a temporal restriction on clauses that contain no such limitation. We therefore reverse the ALC's order limiting the Consent Order to the 2001 construction project and remand for the court to consider the Abels' request for an injunction in light of the conclusions reached in this opinion.

## CONCLUSION

For the foregoing reasons, the ALC's decision is

**REVERSED AND REMANDED.**

KONDUROS and MCDONALD, JJ., concur.

---

1. We note the agreement between the Abels and the Church, by its terms, does not require DHEC to act or refrain from acting in any way, and this court's decision should not be read to impose any such duty.