**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Kenneth A. Davis, as Personal Representative of the Estate of Kenneth Miles Davis, Respondent,

v.

Cole Austin Dunn and John Richard Smith, Appellants.

Appellate Case No. 2018-000735

———————

Appeal From Horry County
Larry B. Hyman, Jr., Circuit Court
Judge

———————

Unpublished Opinion No. 2021-UP-045
Heard December 10, 2020 – Filed February 10, 2021

———————

**AFFIRMED IN PART, VACATED IN PART**

———————

John Dwight Hudson, of Hudson Law Offices, of Myrtle Beach, for Appellants.

Ellis Reed-Hill Lesemann and John Taylor Powell, both of Lesemann & Associates LLC, of Charleston, for Respondent.

———————

**HILL, J:**  On October 9, 2016, three teenage friends, Cole Dunn, Kenneth Davis, and Seth Sarvis were at Davis' property clearing debris from a recent hurricane. Dunn had recently received a twelve-gauge shotgun as a present from his stepfather John Richard Smith.  Taking a break from the work, the friends gathered around Dunn's truck, so Dunn could show his friends the gun.  Believing it was unloaded, Dunn waved the gun around, and it discharged, killing Davis.

Dunn, who was seventeen at the time of the accident, lived with his mother Charlotte and his stepfather Smith.  Charlotte was listed as a named insured on a homeowner's insurance policy with Farm Bureau Insurance Company.  The policy had a liability limit of $300,000.00 "for all damages resulting from any one occurrence . . . regardless of the number of insureds . . . ." and a $5,000.00 limit for medical payments to others for "each occurrence."  There is no dispute that at the time of Davis' death, Charlotte, Dunn, and Smith were insureds under the Farm Bureau policy.

Representing Davis' Estate, John Taylor Powell, Esquire, sent a *Tyger River*[1] demand letter to Farm Bureau on January 30, 2017. The letter was captioned "Re: . . . Your insured: Charlotte Smith & Cole Dunn," and set out the Estate's view of the facts and its theories of who was liable for Davis' death.  The letter claimed Dunn was liable for Davis' death and Charlotte was additionally liable due to her negligent entrustment of the shotgun to Dunn.  The letter did not mention Dunn's stepfather Smith.  In the letter, the Estate asked Farm Bureau to tender the policy's limits ($305,000.00) in exchange for a Covenant Not to Execute that would allow the Estate "to pursue and collect on any other liability insurance policies should any be located, as to all claims against Defendants Charlotte Smith and Cole Dunn  . . . ."

The next day, Farm Bureau wrote Powell and agreed to pay the policy limits in exchange for a Covenant that "would allow [the Estate] to pursue and collect any other liability insurance policies, should any be located."  Farm Bureau sent a

---

[1] *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.C. 286, 170 S.E. 346 (1933) (holding an insurer has a duty to sacrifice its own interests for the interests of the insured, and accordingly, if an insurer unreasonably refuses to settle a claim against the insured for an amount within the policy limits, the insurer will be required to pay any excess verdict and costs after litigation).

proposed Covenant to the Estate.  Powell asked for a change in the wording of the Covenant to specifically state:

> This Covenant Not to Execute is not intended to and DOES NOT diminish, impair or limit [the Estate's] rights, if any, to recover additional funds from other insurance coverage available to Cole Austin Dunn or Charlotte Smith.  Further, this Covenant Not to Execute is not intended to and DOES NOT diminish [the Estate's] ability to recover against any other potentially responsible party that is not a party to this Covenant.  This Covenant Not to Execute does not constitute a release of any claim or of any party.

Farm Bureau accepted the change, and, in the final version of the Covenant, the above words appeared in bold.  The Covenant also contained a merger clause and stated:

> It is understood [the Estate] may file suit regarding this Claim.  The Covenant Not to Execute is not intended to limit or impair the right of [the Estate] to file suit.  However, [the Estate and its] attorney agree that, *in compliance with the Court's Order approving this settlement*, such litigation will not involve [Farm Bureau] as this settlement is full, final and complete as to [Farm Bureau].  [The Estate and its] attorney agree that [Farm Bureau] has no obligation in this matter whatsoever after the payment of the proceeds and the signing of this Covenant Not to Execute.

(Emphasis Added).  The circuit court approved the Wrongful Death Settlement on March 15, 2017.  The ensuing Order decreed:

> Under the terms of the settlement, [Farm Bureau], its named insured[,] and the Defendants are to be given a [Covenant] *which will fully and completely release the referenced policy* ONLY as to any and all claims arising out of or in connection with the injuries and death of

[Davis] as a result of the accident which occurred on October 9, 2016 . . . . "

(Emphasis added). The Order went on to provide:

> [T]his Order specifically preserves the right of [the Estate] to file suit or litigation *but insurance carrier [Farm Bureau] will not and does not have any further responsibility or obligation in connection with any such litigation* and has no obligation to Answer or defend the action, *as it will have protected its insured(s) with a Covenant Not to Execute.*

(Emphasis added). On June 6, 2017, Powell filed this lawsuit, on the Estate's behalf, against Dunn for negligence and against Dunn's stepfather, Smith, for negligent entrustment of the shotgun and negligent supervision of Dunn. The next day, Powell sent a letter to Farm Bureau explaining the Estate had intentionally left Smith out of the Covenant in order to preserve its right to sue Smith for "separate and independent liability for the events that led to the death of [Davis]." The letter indicated the Estate believed that because Smith "was at all times an insured under [the Farm Bureau policy] . . . , the policy provides coverage for the separate and independent negligence of [Smith]." The letter stated:

> On this basis, Farm Bureau has a duty to defend and indemnify [Smith] under the [Farm Bureau policy]. If Farm Bureau fails to uphold these duties, it will result in legal claims against Farm Bureau on [Smith's] behalf, who is exposed to a significant potential verdict. If the claim is not resolved and we receive a jury verdict against [Smith], we are likely to seek assignment of these claims against Farm Bureau.

Dismayed by Powell's tactics, Farm Bureau responded by claiming the Covenant covered Smith, as well as Dunn and Charlotte, because Smith was an insured under the same policy. Farm Bureau asked the Estate to dismiss the lawsuit or at least dismiss Dunn, who was a party to the Covenant. Farm Bureau indicated it had paid out the full coverage available for the entire family under the policy in exchange for the Covenant and the Estate was "acting with subterfuge" in its attempt to recover against Farm Bureau twice. Powell replied the Estate was acting within its rights to sue both Dunn and Smith, and it was "Farm Bureau's failure to protect their insured,

by not requiring [Smith's] inclusion as a party to the Covenant, that has now exposed [Smith] and Farm Bureau to substantial liability . . . ."

Smith and Dunn filed an answer to the negligence action, as well as counterclaims for breach of contract, breach of contract accompanied by fraudulent acts, breach of the covenants of good faith and fair dealing, and a Rule 11, SCRCP violation. The Estate moved to dismiss Smith and Dunn's counterclaims, and Smith and Dunn moved to dismiss the Estate's action, asserting the Covenant and Order barred the suit based on the doctrines of res judicata, collateral and equitable estoppel, bad faith, and accord and satisfaction. Smith and Dunn also filed a motion to reform the Covenant to clarify that it covered all household members and insureds, including Smith.

After a hearing, the circuit court issued a written order that converted the motions to dismiss into motions for summary judgment and ruled neither the Farm Bureau policy, nor the Covenant were ambiguous; Charlotte was the only named insured covered under the policy; Smith was not a party to the Covenant; and the Covenant was not a release of any party.

The order denied Smith and Dunn's motions for summary judgment as to the Estate's claims, rejecting their contention the Estate acted deceitfully by crafting its initial *Tyger River* demand to not include Smith; finding the estoppel claims were without merit; and denying Smith and Dunn summary judgment on their claim to reform the Covenant. Granting summary judgment to the Estate on Smith and Dunn's counterclaims, the circuit court found that because Smith was not a party to the Covenant, he could not, as a matter of law, assert a cause of action for breach of contract, breach of contract accompanied by a fraudulent act, or breach of the covenants of good faith and fair dealing. The circuit court found Dunn's contract-based claims also failed because the Estate did not breach the Covenant by suing Dunn. Finally, the circuit court found Smith and Dunn did not properly move for sanctions under Rule 11, SCRCP, and, even if they had, the Estate's lawsuit against Smith and Dunn was not sanctionable. Smith and Dunn now appeal.

## I.

We affirm the circuit court's grant of summary judgment to the Estate on Smith and Dunn's counterclaims. Smith and Dunn assert the Estate's lawsuit breached the Covenant. Smith was not a party to the Covenant, and the Covenant unambiguously

reserved the Estate's rights to file a lawsuit such as this one.[2]  Try as we might, we cannot read the Covenant as a release of Smith's or Dunn's liability or a covenant not to sue.  *See Progressive Max Ins. Co. v. Floating Caps, Inc.*, 405 S.C. 35, 46, 747 S.E.2d 178, 184 (2013) (finding that if the language of a covenant not to execute is "plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect").  Without a breach, Smith and Dunn cannot maintain claims for breach of contract, breach of contract accompanied by a fraudulent act, or breach of the implied covenants of good faith and fair dealing as a matter of law.  *See Wallace v. Day*, 390 S.C. 69, 74–75, 700 S.E.2d 446, 449 (Ct. App. 2010) (stating the interpretation of an unambiguous contract term is a question of law for the court); *Armstrong v. Collins*, 366 S.C. 204, 223, 621 S.E.2d 368, 377 (Ct. App. 2005) (stating an element of breach of contract accompanied by a fraudulent act is breach of contract); *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 473, 597 S.E.2d 881, 884 (Ct. App. 2004) (holding the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract).

What Smith and Dunn are complaining about is their belief that Powell, on behalf of the Estate, attempted to snooker Farm Bureau by threatening a *Tyger River* scenario if Farm Bureau did not cough up its policy limits to protect Charlotte and Dunn, all the while planning to reprise the threat once the limits were paid and Smith became a defendant.  Divide and conquer may be a vaunted military tactic, but lawyers quickly learn that its misuse in the practice of law often vanquishes something other than one's temporary adversary.  The circuit court found Powell's tactics were not misleading, concluding "The truth of the matter is that [the Estate] and [its] counsel have done exactly what they represented to Farm Bureau and Counsel for [Smith and Dunn], at every step of the way."  We vacate this conclusion because it is not supported by the record.  As the Order and the Covenant make plain, Powell and the Estate agreed that Farm Bureau's policy was released from any further claims or litigation.  Powell's June 7, 2017 demand letter revealing his strategy to leverage the

---

[2] Smith and Dunn ask us to incorporate Farm Bureau's negotiations of the *Tyger River* demand into the Covenant, or in the alternative, to find a separate contract was formed between the Estate and Smith as a party when Farm Bureau accepted the Estate's *Tyger River* demand.  Even if we were to do so, it would gain them nothing, for at no point during the *Tyger River* negotiations did any party agree to a *release* of Smith or Dunn or to a covenant not to sue.

policy again (with Smith now as the fulcrum) was not in keeping with the Order or the Covenant.

Smith and Dunn seek in this lawsuit to stop Powell's manipulation of Farm Bureau. But this lawsuit is not about whether any *Tyger River* action survived Farm Bureau's payment—and the Estate's acceptance—of the policy limits.

## II.

Next, we affirm the circuit court's denial of Rule 11, SCRCP sanctions against the Estate. We agree with the circuit court that the filing of the present lawsuit against Dunn and Smith was not sanctionable, as the Covenant expressly reserves the Estate's right to file the suit, and there is good ground to support a negligence cause of action against both Smith and Dunn for Davis' death. *See Father v. S.C. Dep't of Soc. Servs.*, 353 S.C. 254, 260–62, 578 S.E.2d 11, 14–15 (2003) (finding motion for Rule 11, SCRCP sanctions sounds in equity, and therefore if an appellate court agrees with the lower court's factual findings, it will not reverse the denial of motion for sanctions absent a clear abuse of discretion); *see also* Rule 11, SCRCP. To the extent Smith and Dunn contend the Estate should be sanctioned for bad faith litigation related to its Wrongful Death Settlement Petition and "a scheme" to intentionally enter a *Tyger River* settlement against Farm Bureau without an intent to settle the claims against all insureds under the policy, we do not believe this issue is preserved for our review. The circuit court did not rule on it in the Summary Judgment Order, and Smith and Dunn did not file a Rule 59(e), SCRCP motion for a specific ruling as to this argument. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) (providing a party must file a Rule 59(e) motion to preserve an issue for review "when an issue or argument has been raised, but not ruled on").

Our view of whether Rule 11, SCRCP, was violated would be quite different were Farm Bureau a party to this action. Of course, nothing in this opinion prohibits Farm Bureau from seeking a declaratory judgment to determine whether it has further duties and obligations as to any insured or any claim under the sweeping language of the Covenant and Wrongful Death Settlement Order. All we are saying in this opinion is that Mr. Powell's actions in arranging his *Tyger River* demand as he did are not grounds for reversing the circuit court's summary judgment order.

## III.

Affirming summary judgment to the Estate as to Smith and Dunn's counterclaims means the Estate's negligence and negligent entrustment claims may proceed to trial, along with Smith and Dunn's claim to reform the Covenant. We respectfully decline Smith and Dunn's request that we review the circuit court's denials of their summary judgment motion as to these claims and their motion to reform the Covenant.[3] Although the issues Smith and Dunn ask us to review from the denial of their summary judgment motions are related to issues properly before us on appeal, we do not find it necessary or efficient to review them at this time. *See Morris v. Anderson Cnty.*, 349 S.C. 607, 610, 564 S.E.2d 649, 651 (2002) (stating an appellate court "may, as a matter of discretion, consider an unappealable order along with an appealable issue where such a ruling will avoid unnecessary litigation"); *Ballenger v. Bowen*, 313 S.C. 476, 477, 443 S.E.2d 379, 380 (1994) (stating the denial of summary judgment "does not *finally* determine anything about the merits of the case and does not have the effect of striking any defense since that defense may be raised again later in the proceedings" (emphasis in original)). Nothing in the circuit court's order may be construed as affecting (whether by the doctrine of law of the case or otherwise) the merits of Smith and Dunn's defenses or their attempt to reform the Covenant to include Smith as a party on the basis of mistake, estoppel, or other theory.

Accordingly, the grant of summary judgment as to Smith and Dunn's counterclaims and the denial of Rule 11, SCRCP sanctions are affirmed. We vacate, however, the circuit court's finding as explained in Part I.

**AFFIRMED IN PART, VACATED IN PART.**

**THOMAS and HEWITT, JJ., concur.**

---

[3] Although on p. 15 of its order the circuit court appears to grant the Estate summary judgment on Smith and Dunn's motion to reform the Covenant, this ruling does not form part of the ordering clause at the conclusion of the order. Further, the Estate's brief to this court does not contend it moved for or received summary judgment on the motion to reform, but instead, it maintains the circuit court "denied [Smith and Dunn's] motion for summary judgment to reform the Covenant," a ruling the Estate argues, and we agree, is not immediately appealable.